JONATHAN WOODRUFF, Respondent, v. THE IMPERIAL FIRE INSURANCE COMPANY OF LONDON, ENGLAND, Appellant.

After a witness has testified to facts showing that he has some knowledge of the cost or value of buildings, acquired as a dealer or builder, his testimony as to the value of a building is competent.

In an application for a policy of fire insurance upon a building, under the heading of " survey," and following several questions as to the materials of which the building was constructed and its condition, was the question, " For what purpose used; state fully?" The answer was, "Dwelling." *Held*, that this was not a warranty that at the time of the application the building was in use as a dwelling ; that the question simply called for what the building was designed or fitted for ; and that the fact that the building at that time was unoccupied did not establish a breach of warranty.

*Alexander* v. *G. F. Ins. Co.* (66 N. Y. 464); *Ashworth* v. *B. M. F. Ins. Co.* (112 Mass. 422), distinguished.

Defendant's agent at the time the application was made was informed that the house was then unoccupied and vacant. *Held*, that a condition in the policy requiring notice of and a special agreement indorsed on the policy in case the building became vacant and unoccupied, was waived.

*Chase* v. *H. Ins. Co.* (20 N. Y. 52); *Alexander* v. *G. F. Ins. Co.* (66 N. Y. 464); *Walsh* v. *H. F. Ins. Co.* (73 N. Y. 6), distinguished.

Within a few days after the policy was issued the house was in fact occupied as a dwelling. Subsequently there was a change of tenants; it did not appear but that the new tenants went in as soon as the old went out. No loss then occurred. *Held*, that the change was not a breach of said condition.

The building was destroyed by fire April 3, 1875. It was rented and occupied up to April 1st. The tenant had permission " to keep his things " there after that time, and as a witness for defendant he testified, " my occupancy ceased when my things were burned up ; " he also testified that he occupied as tenant, the barn and carriage house, which were also insured by the policy, and continued so to do after the fire. Another witness, who went to the house to see about repairs the day before the fire, testified that he saw articles of furniture in one of the rooms, and others were locked. *Held*, that the evidence justified the submission of the question as to whether the house was " vacant and unoccupied," to the jury.

As to whether a " vacancy " under the terms of such a policy must be a vacancy of the entire premises, or whether each building insured stands by itself under the condition, *quære.*

(Argued November 18, 1880; decided December 7, 1880.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 15, 1879, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought upon a policy of fire insurance.

The facts pertinent to the questions discussed are set forth sufficiently in the opinion.

*Samuel Hand* for appellant. The house being vacant at the time of and before the fire the policy was avoided. (*Paine* v. *Ins. Co.*, 5 T. & C. 619; *Alexander* v. *Germania Ins. Co.*, 66 N. Y. 464; *Ashworth* v. *Ins. Co.*, 112 Mass. 422.) The knowledge of defendant's agent that it was vacant did not in

any way waive or impair the force of the warranty in the written application, as by the express term of the policy no waiver was good unless by agreement indorsed upon the policy. (*Walsh* v. *Hartford Ins. Co.*, 73 N. Y. 5; *Alexander* v. *Germania Ins. Co.*, *supra;* *Chase* v. *Hamilton Ins. Co.* 20 N. Y. 52–56.)

*A. Edward Woodruff* for respondent. The condition in this policy as to occupation was waived, as to presume otherwise would be to impute to defendant a fraudulent intent in issuing to plaintiff a policy known by it to be invalid. (*Van Schoick* v. *Niagara Ins. Co.*, 68 N. Y. 434; *Broadhead* v. *Lycoming Ins. Co.*, 14 Hun, 452; *Chase* v. *People's F. Ins. Co.*, id. 456; *McCabe* v. *Farm Building Ins. Co.*, id. 604; *Cone* v. *Niagara Ins. Co.*, 60 N. Y. 619; *Hill* v. *Hibernia Ins. Co.*, 10 Hun, 26; *Richardson* v. *Westchester Ins. Co.*, 15 id. 472; *Arthur* v. *Homestead Ins. Co.*, 78 N. Y. 465.) A waiver of a condition prospectively operates directly on the terms of the contract by eliminating the condition, and such waiver may be established by parol evidence. (*Arthur* v. *Homestead Ins. Co.*, 78 N. Y. 465; *Hay* v. *Star Ins. Co.*, 77 id. 235; *Van Schoick* v. *Niagara Ins. Co.*, 68 id. 434; *Pechner* v. *Phœnix Ins. Co.*, 65 id. 195; *Cone* v. *Niagara Ins. Co.*, 60 id. 619; *Sheldon* v. *Atlantic Ins. Co.*, 26 id. 460; *Ames* v. *N. Y. Union Ins. Co.*, 14 id. 253; *Carroll* v. *Charter Oak Ins. Co.*, 1 Abb. Ct. App. 316; *Insurance Co.* v. *Slaughter*, 12 Wall. [U. S.] 222; *Gort* v. *Natl. Prot. Ins. Co.*, 25 Barb. 468; *Hough* v. *City Fire Ins. Co.*, 29 Conn. 10; *Aurora Fire Ins. Co.* v. *Kranich*, 36 Mich. 289; *Devine* v. *Home Ins. Co.*, 32 Wis. 47; *Viele* v. *Germania Ins. Co.*, 26 Iowa, 9.) Describing a house as a "dwelling house" is not a warranty that it is occupied. (*Browning* v. *Home Ins. Co. of Columbus*, 71 N. Y. 508.) The diagrams and plans of the property were properly admitted in evidence. (*Curtis* v. *Ayrault*, 3 Hun, 487.) Defendant is estopped from setting up the condition as to occupation, for the reason that its conduct was such as to induce the plaintiff to forego a formal compliance

with it. (*McCabe* v. *Farm Building Ins. Co.*, 14 Hun, 602; *Continental Bk.* v. *Bk. of the Commonwealth*, 50 N. Y. 578, and 68 id. 434; *Bowman* v. *Agricultural Ins. Co.*, 59 id. 521.) The premises were not vacant and unoccupied. (*Reynolds* v. *Commerce F. Ins. Co.*, 47 N. Y. 597; *Rann* v. *Home Ins. Co.*, 59 id. 387; *McMaster* v. *Ins. Co. of North Am.*, 55 id. 222; *Clinton* v. *Hope Ins. Co.*. 45 id. 464; *Hoffman* v. *Ætna Ins. Co.*, 32 id. 405; *Herman* v. *Merchants' Ins. Co.*, 44 N. Y. Supr. 444; *Bryan* v. *Peabody Ins. Co.*, 8 W. Va. 605; *Westfall* v. *Hudson River Ins. Co.*, 2 Duer, 490; *Bumstead* v. *Dividend Mut. Ins. Co.*, 2 Kern. 81; *Insurance Co.* v. *Slaughter*, 12 Wall. [U. S.] 404; *Cummins* v. *Agricultural Ins. Co.*, 67 N. Y. 260, reversing 5 Hun, 554; *Shearman* v. *Niagara Ins. Co.*, 46 N. Y. 532; *O'Neil* v. *Buffalo Ins. Co.*, 3 Comst. 122; *Globe* v. *Continental Ins. Co.*, 13 Hun, 611; *Wait* v. *Agricultural Ins. Co.*, 13 id. 371; *Paine* v. *Agricultural Ins. Co.*, 5 T. & C. 619.) The whole course of conduct of the insurance company should preclude it from now asserting that the policy was void on account of the premises being vacant and unoccupied. (*Titus* v. *Glens Falls Ins. Co.*, Alb. L. J., Aug. 28th, 1880, p. 174. Decided Court of Appeals, June 15, 1880.) Where, by a policy of insurance, the answers of the insured are made warranties, if a question is not answered, there is no warranty that there was nothing to answer, and in the case of a partial answer the warranty cannot be extended beyond the answer. (*Dilleber* v. *Home L. Ins. Co.*, 69 N. Y. 256.)

DANFORTH, J. As to the plaintiff's loss from a cause within the terms of the policy, there is no dispute, and he is entitled to the indemnity for which he bargained, unless there was on his part a violation of some condition or warranty expressed in that instrument. The amount of the loss, however, was in issue upon the pleadings. The recovery was justified by the plaintiff's evidence, but it is claimed by the learned counsel for the appellant that such evidence was improperly received, and whether it was or not is the first question to be considered.

The application on which the policy issued contains no statement as to the value of the buildings, nor was the defendant misled in respect thereto. The insurance asked for was $7,000 on the dwelling and $2,000 on a barn described as 100 feet from the house. These things are recited in the policy, there brought together and stated in these words: " $9,000 — five years — $100." Payment of the premium is admitted on the face of the policy, and in consideration thereof the defendant promised to pay to the assured all such loss or damage not exceeding $9,000, "as shall happen by fire to the property as above described, during five years from the first of April, 1872, to be estimated according to the actual cash value of the property at the time the fire shall happen;" and a loss having occurred, the assured is required by subdivision 11 of the policy to give forthwith an account thereof, showing among other things " what was the whole cash value of the subject insured." The policy also contained a condition declaring it to be of no force and effect in case "the above mentioned premises * * * become vacant and unoccupied, or the hazard otherwise increased. * * * without special agreement indorsed on this policy." The complaint alleges the burning of the dwelling-house April 3, 1875, the other facts above alluded to, and that by reason thereof the whole sum for which the house was insured became due to the plaintiff. The defendant admits the insurance, and averring in the language of the policy above set forth ; that the loss was to be estimated according to the actual cash value of the property at the time the same shall occur, alleges "that it was not then of the cash value of $7,000, but that its cash value did not exceed $3,000." Under the policy and the issue made by the pleadings it was incumbent on the plaintiff to prove the fact stated, viz., the actual cash value of the property at the time it was destroyed. The evidence objected to was given for that purpose, and the particular question put to each witness appears to have been so framed that it would meet the limitation prescribed by the twelfth section of the policy, to wit, that the cash value of the property destroyed should in " no case exceed what would be

the cost to the assured at the time of the fire, of replacing the same." Blake therefore was asked, "have you made an estimate of what it would cost at the time of the fire to build such a house in that location?" and after answering that he had, and giving some intermediate explanation, put it at $8,055.68. Such in substance was the course pursued with other witnesses whose testimony varied as to the amount and whose means of information were more or less ample. Blake was a carpenter and builder, Bonney an architect, Harris an insurance and real estate agent, but had of late been engaged in appraising similar property, had formerly worked in the erection of buildings, being by trade a "tinner and plumber." He says: "I built a good many." Duryea had built houses and had bought and sold others. He was also a real estate appraiser, knew the house in question and its condition. Slater was a house painter, had built houses, and knew and had examined the one covered by the policy. These witnesses were all competent to express an opinion upon the question submitted to them, for they had some knowledge of the cost or market value of such property, acquired as dealers or builders. (*Bedell* v. *L. I. R. R. Co.*, 44 N. Y. 367; *Judson* v. *Easton*, 58 N. Y. 664.) The facts on which their opinions rested were stated to the jury, and they were thus prepared to give to the testimony such weight as they thought proper under the instructions of the learned trial judge. To these instructions no exception was taken, nor was he asked to charge further upon that subject. Before issuing the policy the company might have examined and estimated the insurable value of the property, and it would not have been an exercise of undue prudence had they done so. It does not appear that they did not. They did receive a premium in advance for an insurance for a term of years at a fixed sum, and should now make good their promise to such extent as the evidence requires. It is true the defendant's witnesses were of the opinion that the property was of less value, although none put it so low as the sum set out in the answer, and if their testimony had been accepted by the jury a different result would have been reached; but that cannot now aid the defendant.

It is also urged that by the terms of the proposal for insur-
ance, the plaintiff warranted, at the time the application
was made, the building was used as a dwelling, "whereas it
was vacant and unoccupied." It would, I think, be a sufficient
answer to this position, that such defense was not set up in the
pleadings, but without insisting upon that objection, it does not
seem well founded. It rests upon the language of the applica-
tion. Under the heading "Survey," are several questions
unanswered, and then the following: "Building; is it brick or
wood? A. Wood;" there are questions as to its "con-
dition," "When built?" "How many stories high?"
"Whether it was ever on fire?" then the question "For what
purpose used?" "State fully" A. "Dwelling." This is not
susceptible of the interpretation given to it by the learned coun-
sel for the appellant. The question does not call for the present
as distinguished from the appropriate use of the building. It
relates to a "building," and is intended to elicit information
as to whether it is for traffic, as a store, or mechanical pur-
poses, as a shop; it is, as if the questioner asked, for what is the
building designed or fitted? And the answer is descriptive, not
of any present occupation or actual use, but simply of the class
or character of the 'building. We find confirmation of this
view in the provision of the policy that if the "premises are
at any time during the period for which it would otherwise
continue in force, used for more hazardous purposes than that
called for in the original contract of insurance, the policy shall
be of no force."

The contract thus referred to calls for or describes as the sub-
ject of insurance "a two story frame dwelling-house," and the
two phrases have an evident relation to each other. The in-
quiry and the answer in the application enter into the policy,
and furnish a criterion by which to limit the responsibility of
the insurer. The answer also shows that this was the under-
standing of the defendant. It set up as a defense that
the plaintiff on or about the 1st of January, 1874, without the
knowledge of the defendant, and against its will, used the first
story of the building or dwelling-house, or a part of said build-

ing in said policy mentioned, as a depository or place for storing loose straw or hay, and continued to make or suffer such use from thence until and at the time of the fire in the complaint alleged, " and that for this additional risk they never charged or received any premium," and therefore they say the policy became void. It is nowhere stated that the defense was a breach of warranty as to the occupation of the house at the time the policy was issued. The cases (*Alexander* v. *Germania F. Ins. Co.*, 66 N. Y. 464, and *Ashworth* v. *Builders' M. F. Ins. Co.*, 112 Mass. 422), cited by the learned counsel for the appellant, do not apply. In the first, the insurance was upon a " building occupied as a dwelling," and the other turned upon the meaning of the word " unoccupied," as used in the policy. On the other hand, the case is within the decision of this court in *Browning* v. *Home Ins. Co. of Columbus* (71 N. Y. 508), and that of *Cumberland Valley Mut. Protection Co.* v. *Douglas* (58 Penn. St. 419), where it is held that calling the premises a dwelling-house is a description of the subject, not a stipulation, and is no engagement that they are occupied, but only that when occupied it shall be as a dwelling-house.

In the next place, the defendant was informed, at the time the application for insurance was made, that the house was then unoccupied and vacant, and with knowledge of this fact the premium was taken and the policy issued ; the defendant, therefore, cannot be permitted to say it never assumed the risk. (*Van Schoick* v. *Niagara Fire Ins. Co.*, 68 N. Y. 434.) *Cone* v. *Same*, decided in the Supreme Court (3 T. & C. 33), and affirmed here (60 N. Y. 619), establishes upon facts substantially like those before us, that it is proper to show knowledge on the part of defendant's agent of the condition of the dwelling-house when the policy was issued, and this being established, the stipulation in it requiring notice or an indorsement thereon to that effect, should be deemed waived by him, and through him by the company. Nor is there an inconsistency between this result and (*Chase* v. *Hamilton Ins. Co.*, 20 N. Y. 52 ; *Alexander* v. *Germania Ins. Co.*, 66 id. 464, and *Walsh*

v. *Hartford Fire Ins. Co.*, 73 id. 5) the cases referred to by the appellant. In the first two the applicant for insurance made a misstatement, and the knowledge of the defendant's agent did not aid the plaintiff; in the last a distinction is taken between the power of an agent at the inception of a contract and after it has taken effect. Within a few days after the policy now in question issued, the house was in fact occupied as a dwelling, and continued to be so until June or July, 1874, when, as the defendant claims, for a short time, it was vacant. The fire did not occur then, nor until April, 1875, and we can find nothing in the pleadings which makes that vacancy material, nor any thing in the evidence which would permit the court to decide its existence as matter of law, and hardly enough to warrant a conjecture or suspicion to that effect on the part of the jury, much less a finding. The claim made, rests on the testimony of Elias S. Harris, given to defendant's counsel upon cross-examination. He says, as agent for the plaintiff he rented the house to Brunt and Harris, part to each, in June or July, 1874. He was asked, "When did you go to Woodruff to see the agency?" His answer, "I think it was about the time about that it was vacated by some of his folks; when they moved out I asked if he wanted to rent it, he said yes; I found two parties who wanted small apartments, and I put them in there more to take care of the house than any thing else." For any thing that appears the new tenants went in at the instant the others went out, for the only witness upon the subject says he cannot tell how long the latter were out before the others went in, and there is no guide by which to determine. But as to this the judge charged, "If parties moving out, and others moving in, and the necessary time for such change of situation occurs between the moving out and the moving in, unless such time is unreasonable, the policy would not become invalidated," and left it to the jury to say what would be a reasonable time. No exception was taken to this direction, and, in view of the fact that the occurrence was nearly a year before the fire, was as favorable to the defendant as it had a right to ask. It

does not, therefore, become necessary to inquire whether a vacancy at that time would be within the provision of the policy and, if so, to determine its effect. It is, however, alleged in the answer that, at the time of the fire, on April 3, 1875, the house was vacant and unoccupied, and it is now contended by the learned counsel for the appellant that the court should have held as matter of law that the policy was thereby avoided; but it does not appear that the learned trial judge was at any time requested to make such ruling. On the contrary, the motion for a nonsuit twice repeated was put on other grounds, viz.: at the close of the plaintiff's case on the grounds as stated by counsel:

"1st. The plaintiff has not shown affirmatively that he has fulfilled all the conditions of the policy.

"2d. The plaintiff has not made out his case affirmatively on the subject of the valuation of the property destroyed.

"3d. It has been shown by the plaintiff's own witnesses that the property was vacant and unoccupied during the term of the policy; before Harris and Brunt occupied them, and the non-occupation at any time during the existence of this policy made it void. The motion was denied by the court and the ruling excepted to by the defendant."

And at the close of the whole evidence it was renewed by defendant's counsel on the same grounds, "and" as is said "particularly upon the third ground that the evidence shows the premises were vacant and unoccupied when the policy was issued, and as a matter of law that fact made the policy void, and of no effect." Moreover, the defendant's counsel asked the court to charge: "If the jury find from the evidence that the dwelling became vacant and unoccupied before the fire, or was so vacant and unoccupied at the time of the fire, without special agreement indorsed on the policy, the policy then became of no force and effect, and no recovery can be had." The learned court complied with the request and so charged. It was thus assumed that as to this main and important fact, there was evidence for the consideration of the jury, and they having answered the ques-

tion submitted to them, it is too late now for the appellant to assert the contrary. But if it was otherwise it is clear that the question was one proper for the jury. (*Grant* v. *Howard Ins. Co. of N. Y.*, 5 Hill, 10.) With the exception of a few days at the time of issuing the policy, the brief but uncertain period in 1874, before referred to, the house was rented and occupied by tenants, and so it was up to April 1, 1875. The day before the fire occurred Slater was in the house, to consider what need it had of repairs, and on cross-examination by defendant's counsel was asked what he saw, he said "I saw some articles of furniture there, I believe," in one of the rooms on the first floor. Other rooms were locked, and those he did not enter. His testimony upon this point is of little importance, but it was given in behalf of defendant, and does not show that the house was vacant. The defendant also sought to prove this fact by two witnesses, testifying to admissions by the plaintiff. They were, however, contradicted by him. He swore that he did not make the admissions, and the jury must have believed him. The defendant also examined two witnesses, Harris and Brunt, by commission. They were the last tenants of the house. Harris says: "The occupancy ceased when my things were burned up. I don't think it ceased at all, I asked the agent if I could not get all my things out by the first of April, whether I could keep them in there, and he said I could," and to another interrogation put by the defendant he says, "my occupancy ceased when my things were burned up." The same witness says he "kept a horse and occupied, as tenant, the barn and carriage-house, and continued to do so at the time of and after the destruction of the dwelling-house by fire."

It is not necessary to decide whether the vacancy, under the terms of this policy, must be a vacancy of the entire premises, or whether each subject of insurance stands by itself under the condition, for in the latter view the case went to the jury, and this was not only the defendant's wish, but it was most favorable to it. It was matter of defense, and to be made out by it. It could not have been decided in its favor as a question of law. A vacant house is literally an empty house. This

house was not shown to be empty. There were some things actually seen in it, rooms locked, and not examined, affirmative testimony that the tenants' "things;" and these things, the jury might hold under the evidence, to have been the tenant's furniture, were there, and were burned up. Its value is not given, nor are the articles enumerated. The law affords no rule to determine the value or the quantity of property, household stuff or other chattels, which kept upon the premises limits the risk to that of a dwelling-house, or prevents such a dwelling-house from becoming within the language of insurance, one "more hazardous." The insurers might have covered this question by a stipulation, but they have not done so. One or more persons may live in a house, and in either case it is occupied. They may have much or little furniture, and in neither event is it vacant. Doubtless the contract is to be enforced according to its true spirit, but its meaning must be obvious, and require no straining in order to provoke a forfeiture.

These views cover the questions made by the defendant, and lead to the conclusion that upon the trial no exception was well taken, and that the judgment appealed from should be affirmed.

All concur.

Judgment affirmed.