GERMAN-AMERICAN INSURANCE COMPANY v. S. S. EVANTS.

Decided February 9, 1901.

**1.—Fire Insurance—Waiver of Forfeiture.**

See the opinion for evidence sufficient to show a waiver, by the subsequent conduct of the insurance agent, of a claim by the company of forfeiture of the policy by reason of the insured removing his family from the building, in which his servant continued to sleep at night.

**2.—Same—Vacancy of Premises.**

Also, see evidence held by the Supreme Court, upon application for writ of error, to show that the building had not become vacant or unoccupied within the meaning of the contract of insurance.

Appeal from Cooke. Tried below before Hon. D. E. Barrett.

*Ledbetter & Bledsoe* and *Eldridge & Gardner,* for appellant.

*Cruce & Cruce* and *Potter & Potter,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This was an action filed on the 7th day of April, 1899, in the District Court of Cooke County, Texas, by the plaintiff, S. S. Evants, against the defendant, the German-American Insurance Company, upon a fire insurance policy to recover the sum of $1850. The property insured consisted of a dwelling house occupied by the plaintiff as his home at the time the policy was issued, and his household and kitchen furniture. The policy was issued at Marietta, I. T., September 15, 1898, and the fire which destroyed the house and property occurred on the 21st day of November, 1898.

One of the grounds upon which the company refused to pay the loss and defended the action was that, after the policy was issued, the plaintiff moved out of his dwelling, and left it vacant and unoccupied for more than ten days, in violation of the provisions of the policy. He moved with his family into the upper story of a stone building owned by him, situated about 400 yards from his residence, to stay there during the ensuing winter.

The trial judge charged the jury, in substance, that the plaintiff had forfeited his right to recover on the policy, but submitted to the jury the issue as to whether or not the defendant had waived its right to claim the forfeiture by certain negotiations and consultations which took place between the adjuster for the insurance company and the plaintiff. The trial resulted in a verdict in favor of the plaintiff for the full amount of the policy sued on and interest, and the insurance company has appealed.

The question presented by appellant is, whether the evidence warranted the court in submitting the issue of waiver of forfeiture to the jury. The evidence tended to establish the material allegations in the plaintiff's petition, and was sufficient to entitle the plaintiff to recover the full amount of the policy, unless the policy had been forfeited by reason of the plaintiff's removal from the premises and vacating the same for more than ten days, and the forfeiture had not been waived.

The facts on this issue are briefly these: The plaintiff and his family, at the time the policy was issued, in September, 1898, occupied the premises as a residence—a home. They had a negro man-servant who occupied a servant's house in the back yard. The family left the premises about the first of November, and moved into rooms over the plaintiff's stone storehouse, about 400 yards from the insured home, for the purpose of remaining there during the winter months, as the stone building was warmer than the wooden house insured. They left nearly all their household furniture in the insured house, and had the negro servant to stay and sleep in a side room which was part of the house. After the family had been moved into the stone storehouse for more than ten days, the insured house was burned down, and the household goods almost totally destroyed by fire.

The property insured was situated at Marietta, I. T., and the contract of insurance was made there. The policy contained the following stipulations: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the hazard be increased by any means within the knowledge or control of the assured; * * * or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days.

"If fire occur the insured shall give immediate notice of any loss thereby in writing to the company, protect the property from further damage forthwith, separate the damaged from the undamaged property, put it in the best possible order and make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; * * * and shall furnish, if required, verified plans and specifications of any building.

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this

policy may be subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any provision, privilege, or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The fire occurred November 21, 1898. On the 23d of the same month the appellant's adjuster arrived at Marietta and began an investigation of the extent of the loss. Before beginning his investigation, however, he endeavored to get appellee to sign a printed form of agreement in which it was stipulated that appellant company waived no rights of the company under the policy by reason of the investigation, but appellee refused to sign it, informing the adjuster, however, of the fact that he and his family had moved from the premises into the stone building more than ten days before the fire, but had left the negro in the house, giving him a true and full statement of all the facts upon which the forfeiture was afterwards and is now claimed. The adjuster, upon failing to get the appellee to sign this agreement, announced to appellee and called on others present to witness that he would make the investigation as to the extent of the loss, but that in doing so he desired it distinctly understood that he did not and would not waive any of the conditions of the policy, or rights of his company to which it might be entitled thereunder, and then proceeded in company with appellee to investigate the loss. He requested appellee to make out a list of the personal property destroyed, together with a list of that saved, which appellee did by two or three hours' work. He and appellee went upon the site of the burned building, and he took the dimensions of the building, and requested appellee to meet him at the hotel after supper, which he did; and they then and there discussed the loss, and the adjuster offered to settle it at $1020, which offer appellee declined to accept, and the adjuster left, having never claimed that the policy had been forfeited by reason of the removal, nor for any other reason.

Some ten or fifteen days after the adjuster left Marietta, not having heard from him nor the company, the appellee employed lawyers to make out his proofs of loss, as required by the policy, and on the 15th day of December, 1898, forwarded them by mail to the appellant company at New York, claiming the full amount of $1850. The company received this letter and answered it, notifying appellee that the matter was referred to Mr. Drumm, the adjuster aforesaid, "who had charge of the company's losses in the Indian Territory." Mr. Drumm received the papers referred to him, and also wrote appellee's attorneys that he would call on them soon in reference to the matter, but in none of these letters did the company or the adjuster claim a forfeiture of the policy.

If this temporary absence of the family from the dwelling-house, with a servant left in charge, can be held to be a vacancy within the meaning of the contract, which it is not necessary now to decide—but see Insur-

ance Co. v. Kempner, 12 Texas Civ. App., 533, and 89 Texas, 652; Herman v. Insurance Co. (Iowa), 51 N. W. Rep., 355; Hill v. Insurance Co. (Mich.), 58 N. W. Rep., 355; May on Ins., sec. 249; 2 Beach on Ins., sec. 721; Bryan v. Insurance Co., 8 W. Va., 605; Insurance Co. v. Smith, 3 Colo., 422; Harrington v. Insurance Co., 124 Mass., 126; Woodruff v. Insurance Co., 83 N. Y., 133; Cummins v. Insurance Co., 67 N. Y., 260—this evidence required the court to submit the issue to the jury whether the forfeiture had been waived by appellant, and was sufficient to warrant the jury in finding that it had been so waived.

The acts of the adjuster, after being fully informed of the facts upon which the claim of forfeiture is now predicated, authorized the jury to conclude that he did not claim a forfeiture, but elected to go on with his investigation of the amount of the loss. He required appellee to make out at some labor and trouble a list of the property lost and a list of what he had estimated the loss to be, as the facts authorize us to conclude; left without claiming any forfeiture; allowed appellee to go to the expense and trouble of employing lawyers and of making out his proofs of loss, at no time up to this period claiming the forfeiture. The acts are inconsistent with a claim of forfeiture. At that time the policy was either valid or void, and if the adjuster had intended to claim a forfeiture he should have done so promptly, and not required the appellee to do things which could only be required of him under the contract, thus treating it as still valid and binding. His conduct was such as to leave the appellee under the belief that no forfeiture would be claimed, and he was thus induced to incur expense and perform labor in complying with the terms and stipulations of the policy, which he was not required to do if liability under the policy had been denied. Insurance Co. v. Loyd (Ark.), 56 S. W. Rep., 44; Insurance Co. v. Gibson, 53 Ark., 494; Insurance Co. v. O'Neal, 14 Texas Civ. App., 516; Insurance Co. v. Munger, 49 S. W. Rep., 271; Insurance Co. v. Moriarty, 37 S. W. Rep., 628; Insurance Co. v. Eggleston, 96 U. S., 572, 24 L. Ed., 841; Insurance Co. v. Kuhlman, 78 N. W. Rep., 936; Kingman v. Insurance Co., 32 S. E. Rep., 762.

But it is insisted that the adjuster declared to appellee that his conduct and conversation and offers of compromise must not be taken as a waiver of any of the rights of the company under the stipulation in the policy. The answer to this is, appellee refused to agree to such proposition. This refusal to agree was tantamount to saying to the adjuster: "You know the law and the facts, and you must either treat the policy as void or as valid; you can not do both and you know it— now take your choice;" and he chose to treat it as valid by requiring the appellee to perform such stipulations as were binding upon the insured. This must be treated as an election to waive the forfeiture and hold the policy valid, notwithstanding he declared at the time he was not waiving it.

The adjuster in this case is to be commended for his efforts to avail

himself and his company of both horns of the dilemma, and his faithful struggle to that end reminds us not a little of Byron's description of how Julia did it under an equally pressing emergency:

> "A little still she strove, and much repented,
> And whispering 'I will ne'er consent'—consented."

His acts were totally inconsistent with his declarations, and in the common affairs of men they say: "Actions speak louder than words," and sometimes the law takes the same sensible view of the proposition.

We find no error in the judgment or proceedings prejudicial to the appellant, and order that the judgment be affirmed.

*Affirmed.*

Writ of error refused by the Supreme Court upon the ground that the evidence showed that the house did not become vacant or unoccupied within the meaning of the contract of insurance—pretermitting the question of waiver.