ÆTNA ACCIDENT & LIABILITY CO. v. WHITE et al. (No. 7232.)†

(Court of Civil Appeals of Texas. Dallas. May 8, 1915. Rehearing Denied June 5, 1915.)

1. INSURANCE ☞287—BURGLARY INSURANCE —DEFENSE—FALSE STATEMENTS—EVIDENCE OF MATERIALITY.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4947, providing that any provision in an insurance policy that false statements shall render the policy void or voidable shall be ineffective, unless it appear that the statements were material to the risk, or contributed to the insurer's liability, a false statement in a burglary policy as to the ownership of a safe and the price paid for it was no defense to an action on the policy, in the absence of proof that such statements contributed to the loss or were material to the risk.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 658, 659; Dec. Dig. ☞287.]

2. APPEAL AND ERROR ☞1070 — HARMLESS ERROR — CONFLICTING FINDINGS — SUBMISSION OF ISSUES.

Where issues of fact not made by the pleadings are submitted to the jury, the fact that the jury's findings thereon conflict with findings on issues made by the pleadings does not require a reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4231–4233; Dec. Dig. ☞ 1070.]

3. INSURANCE ☞256—BURGLARY INSURANCE —SUBSEQUENT MISSTATEMENTS—EFFECT.

Any statements made by the insured to the insurer in good faith, relative to the safe, after issuance and delivery of a policy of burglary insurance, in response to the latter's request for information, when not required by the policy, cannot affect the insured's rights, unless he agrees without consideration other than that originally inducing the issuance of the policy, that they shall do so; especially where the insurer's request for information contains no warning that the information may be used, in case of loss, to defeat payment, and no opportunity is given for any arrangement to meet the changed condition, but insured is left in fancied security until a loss occurs.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 540, 549; Dec. Dig. ☞256.]

4. BANKS AND BANKING ☞111—CASHIER— SCOPE OF AUTHORITY—STATEMENTS TO INSURER.

Statements made by a bank cashier in response to an inquiry of the company which had issued a burglary policy, which statements incorrectly described the door of the safe, were not made within the apparent scope of his authority.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 269, 270; Dec. Dig. ☞ 111.]

5. INSURANCE ☞397—BREACH OF WARRANTY —WAIVER.

Where the insurer's general agent inspected the burglarized safe immediately after the burglary, secured details of its construction and character, and thereafter promised to pay the loss, and, as an incident to the adjustment, publicly exhibited a placard announcing that the loss had been adjusted on the date on which it occurred, any breach of warranty by the insured was thereby waived, though the policy provided that no condition should be waived except by a designated officer in a designated way.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1078–1082; Dec. Dig. ☞397.]

6. INSURANCE ☞602—BURGLARY INSURANCE —PROVISION FOR DAMAGES AND ATTORNEYS' FEES—APPLICATION OF STATUTE—LIABILITY INSURANCE.

Rev. St. 1911, art. 4746, providing that 12 per cent. of the loss and a reasonable attorney's fee for procuring a claim against a defaulting insurance company shall be paid the insured whenever the "life insurance company, or life and accident, health and accident, or life, health and accident company liable therefor shall fail to pay the same," does not apply to policies indemnifying against loss by burglary, commonly known as liability insurance, though the company issuing the policy also does an accident insurance business.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1498; Dec. Dig. ☞602.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Lou White and others against the Ætna Accident & Liability Company. From judgment for plaintiffs, defendant appeals. Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

Harry P. Lawther, of Dallas, for appellant. Locke & Locke, of Dallas, for appellees.

RASBURY, J. Appellees sued appellant upon a policy of insurance indemnifying them against loss by burglary, alleging that by the terms of the policy appellant agreed to indemnify appellees, who were engaged in the banking business at Wilmer, Tex., against all direct loss by burglary of money, bullion, bank notes, etc., not in excess of $5,000, if feloniously abstracted from appellees' safe. It was further alleged that a loss did occur by burglary, and that appellees had complied with all the provisions of the policy, but that appellant refused to pay the loss. Judgment was sought for the amount of the loss, approximating $3,300, together with 12 per cent. on the amount of the loss as damages, and together with $500 attorney's fees; the right to recover the last two items being based upon the provisions of article 4746, R. S. 1911.

Appellant admitted the issuance of the policy of insurance, denied any knowledge of a character sufficient upon which to base any belief concerning the burglary and consequent loss and damage, but specifically charged as defensive matter that appellees had breached certain warranties in the policy, and made certain false representations concerning the safe kept by appellees in their banking house, which would reduce the amount of appellant's liability, it being provided by said policy that in case of misstatement in the description of safe, etc., the policy should not be forfeited, but appellant would in case of loss pay the amount only which the premium actually paid would have purchased at the rate charged by the appellant for the actual hazard. The defenses referred to generally above were pleaded specifically by appellant as follows:

(1) That the plaintiffs warranted that the price paid for safe by present owner was $500, and that the warranty was breached, in that the plaintiffs were not the owners of the safe, and had not paid either $500 or any sum therefor.

(2) That the plaintiffs warranted that "the safe proper is fire and burglar proof"; that "fire and burglar proof," as so used, was defined in the policy to mean "that class of safe or vault so designated by safe manufacturers to denote construction intended to protect against loss by fire and burglary"; that, in fact, the safe was not of such class, and was known by the plaintiffs not to be so.

(3) That the policy contained a provision authorizing the company to cancel it on five days' notice on return of unearned premium; that after the policy had been delivered by it to the plaintiffs and accepted by the plaintiffs, to wit, on September 21, 1910, its general agents wrote to the plaintiffs a letter as follows:

"Recently we executed the above policy covering your bank, but the home office has asked us for a little additional description of your safe. Will you please tell us whether the outer door of your safe is reputed of solid steel construction to resist burglary, or if it is simply of iron cases with concrete filling."

And the plaintiffs replied:

"Replying to your inquiry of the 21st inst., will state that the outer doors of our bank safe at this place are of solid steel construction four and one-half inches thick."

That, in fact, the outer doors were iron cases with concrete filling, and that, if the company had known this fact, it would have canceled the policy.

In response to the foregoing pleas appellees pleaded certain facts, not necessary to enumerate, but which will be referred to in our discussion of the issues when necessary.

There was trial by jury, to whom the case was submitted on special issues of fact. Upon the findings of the jury judgment was rendered for appellees, the court refusing to allow the damages and attorneys' fees. From the judgment appellant has appealed, and appellees file a cross-assignment challenging the court's action concerning the damages and attorney's fees.

The facts necessary to a disposition of the appeal are that appellant did issue to appellees, who were bankers in the town of Wilmer, Tex., a policy of insurance by which appellant agreed to indemnify appellees against direct loss by burglary of money, bullion, bank notes, etc., to the extent of $5,000, which might be feloniously abstracted from appellees' safe and their other office furniture, fixtures, etc. The policy issued to appellees was not based upon a written application made therefor by appellees. One C. R. Rea, of Lancaster, solicited appellees to take the insurance, and after appellees agreed to take the insurance Rea offered the business to the general agency of appellant in Dallas, where it was accepted, and the policy prepared and delivered to Rea, who made all representations of fact upon which the policy was issued, and who in turn delivered it to appellees. The policy was issued August 25, 1910. Thereafter C. H. Verschoyle, appellant's general agent, at Dallas, wrote and forwarded to appellees the following letter:

"Dallas, Texas, September 21, 1910.
"White Banking Company, Wilmer, Texas.
"In re Burglar Policy No. BB340.

"Recently we executed the above policy covering your bank, and the home office has asked us for some little additional description of your safe. Will you please advise us whether the outer door of your safe is reputed of solid steel construction to resist burglars, or is it simply of iron casing with concrete filling. Kindly favor us with an early reply.
"Yours very truly,
"C. H. Verschoyle & Co.,
"General Agents."

To the foregoing the following reply was received:

"Wilmer, Texas, September 22nd, 1910.
"C. H. Verschoyle & Co., Dallas, Texas:

"Replying to your inquiry of the 21st inst., will state that the outer doors of our bank safe at this place are of solid steel construction, four and one-half inches thick. If we can be of further service to you, kindly command us.
"Yours very truly,
"White & Co.,
"Carl Tygert, Cashier."

Subsequent to the foregoing appellees did suffer a loss by burglary approximating $3,300, which appellant refused to pay. In the policy were certain conditions which the parties agreed should be conditions precedent to any recovery by appellees under the policy, among such conditions being the following:

"(b) 'Fire and burglar proof,' as used in this policy, shall be deemed to mean that class of safe or vault so designated by safe manufacturers to denote construction intended to protect against loss by fire and burglary.

"(c) In case of misstatement in description of safe, vault, or protective appliances, or failure to maintain watchman service as described in the warranties of this policy, the insurance hereunder shall not be forfeited, but the company shall pay the amount of indemnity which the premium would have purchased at the rate charged by the company for the actual hazard."

Certain information furnished by appellees and made in the form of statements of fact was contained in the policy, which was warranted by appellees to be true, and among which statements were the following: (1) The safe proper is fire and burglar proof (i. e., fireproof with steel lining and exposed bolt work—steel); (2) thickness of outer burglar proof door, exclusive of bolt work, is four inches; (3) safe was purchased secondhand August, 1910; (4) price paid for safe by present owner was $500. The safe was burglarized in the early morning of February 15, 1913. Entry was effected by forcing the safe open or apart by some character of explosive. Verschoyle, appellant's general agent, was informed of the burglary promptly, and proceeded to Wilmer, arriving there about 8 or 9 o'clock of the morning of the burglary. He inspected the safe and the premises and examined and checked the books, counted the cash, and said everything was satisfactory, and informed appellees that as soon as he could prepare proof of loss, which would be the following Saturday, and appellees could sign same, the loss would be paid. Verschoyle, in effect, admitted the promise to pay, but said that the promise was made upon the assumption that everything was, in fact, satisfactory, and because the conditions of the policy, upon which liability was afterwards denied, did not occur to him, although he examined the safe while adjusting the loss, and saw that it was not as represented in the policy. Returning to Dallas, Verschoyle examined his records and prepared and forwarded proofs of loss to appellees for the amount of the adjustment for appellees'

signature. In the meanwhile Verschoyle gathered portions of the safe and some of the silver left by the burglars and placed them in a display window in a building on one of the principal streets of Dallas, accompanied by the following placard:

"Burglars.
"Pieces of Safe of White Banking Company, "Blown at Wilmer, Texas.
"Burglary February 15th, 3 a. m.
"Loss adjusted February 15th, 11:30 a. m.
"Ætna Accident & Liability Company,
"C. H. Verschoyle & Co."

It was shown at the trial practically without dispute that the safe installed in appellees' bank was that class of safe designated generally by safe manufacturers as a fire and burglar proof safe. The safe, however, while fireproof, did not have steel lining and exposed bolt work, nor was the thickness of the outer door, exclusive of bolt work, four inches. The character of the safe was known to Rea when he solicited the insurance from appellees. Rea claims to have imparted his knowledge to Verschoyle, which Verschoyle denied. Appellant declined to pay the amount demanded by appellees for the reasons set forth in its answer, but did offer to pay the amount it would have been liable for under the amount of premium paid, based on the alleged actual hazard.

Many issues of fact were submitted to the jury, and we have carefully analyzed them with reference to the issues to which they relate. The findings are supported by the evidence, and will supply any facts omitted by us. These findings, in our own language are: (1) That the safe which was burglarized was that class of safe designated by manufacturers as "fire and burglar proof," but it did not have steel lining and exposed steel bolt work; nor did it have an outer door four inches thick, exclusive of bolt work; (2) that the difference in the specifications contained in the policy and those of the safe actually in use was not material to the risk; (3) that they did not know who owned the safe, but that ownership was also immaterial to the risk; (4) that Rea, who solicited the insurance from appellees, knew the exact character of the safe when the policy was issued, but that Verschoyle, appellant's general agent, did not; (5) that Verschoyle, appellant's general agent, had he known that Tygert misstated the character of the safe when Verschoyle inquired about it, would have canceled the policy; (6) that Tygert did not have the authority to speak for appellees concerning the safe, and did not consult them, and was but giving his opinion in that respect; (7) that Verschoyle, after inspecting the safe after the loss, and ascertaining its character, admitted liability on the policy and promised payment.

It is first asserted as a proposition under several assignments of error that the trial court should have granted appellant a new trial, because the findings of the jury are so

conflicting and contradictory that they do not sustain the judgment of the court entered thereon.

[1] In connection with the proposition thus stated we will discuss its application to the first issue raised in appellant's pleading. This issue is that appellees, by a misstatement of fact, breached the warranty in the policy to the effect that the "price paid for [the] safe by present owner was $500," while it was shown by the evidence that appellees not only did not pay $500 for the safe, but did not own same, and that as a result the amount recoverable was reduced in accordance with other provisions of the policy herein noted. As bearing on this issue, the jury found that from the evidence they did not know whether the owner of the safe paid $500 for it at the date of the issuance of the policy or not, but that, if the then owner did not pay so much for it, such fact was immaterial to the risk. It was in evidence as an undisputed fact that at the time the policy was issued appellees were lessees of the safe, and W. D. Blair, a dealer in safes, was the owner. The policy seems to contemplate that ownership may be in the assured or another, since it agrees to indemnify the owner against loss to the safe, etc., "to the extent of the assured's interest or his liability as tenant," and appellees did agree with Blair to insure the safe. Blair received the safe from a customer in part payment of another safe, and was unable to say what he allowed for it, though he thought about $250. There was no evidence introduced by appellant tending to show wherein the price paid for the safe by the owner was material to the risk assumed by appellant. Article 4947, Vernon's Sayles' Stats. 1914, provides, in effect, that any provision in a policy of insurance that statements therein made, if untrue or false, shall render the contract of insurance void or voidable, shall be without effect, and constitute no defense to any suit thereon, "unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case." This statute clearly places upon the litigant who alleges a breach of the contract by misstatement or misrepresentation the burden of showing that the "matter or thing misrepresented was material to the risk or actually contributed" thereto. No such showing was made, and, while the jury found the price paid for the safe was not material to the risk, we think the finding under the statute was unnecessary, since, in the absence of proof showing the materiality of the provision, it is, as matter of law, immaterial. The article of the statute is plain and unambiguous, and applies to every character of insurance. Scottish Union & National Insurance Co. v. Wade, 127 S. W. 1186. Hence the undisputed facts that appellees were not the owners of the safe and the failure of the jury to find the price paid for the safe by Blair when he acquired it do not, in view of the statute, present such conflicts and contradictions as prevent a valid judgment thereon. These facts, however true, constituted no defense to the suit in the absence of a showing that they in some manner contributed to the loss or were material to the risk.

[2] Under the proposition just stated it is further urged that the findings of the jury on appellant's second defense pleaded are also so conflicting and contradictory that they will not sustain the judgment of the court. This defense, which we have stated in full at another place in this opinion, was that appellant was not liable because appellees had breached the warranty in the policy that "the safe proper is fire and burglar proof," and which warranty was defined at another place in the policy to mean "that class of safe or vault so designated by safe manufacturers to denote construction intended to protect against loss by fire and burglary." The findings of the jury on the issue thus presented, as shown in our statement of the case, is that the safe was that class of safe designated by manufacturers as fire and burglar proof. Thus it is seen that the jury found, as matter of fact, that the safe was exactly the kind of safe defined in appellant's policy, and of the kind specifically pleaded by appellee as having been warranted. But, as further matter of fact, the policy provided in another warranty, in further definition of a fire and burglar proof safe, that it should have steel lining and exposed steel bolt work, with an outer door 4 inches thick, exclusive of bolt work. A reference to the pleading of appellant, however, will show that it did not plead that portion of the warranty just quoted, and did not rely upon the same as a defense though for some reason the evidence on that issue was submitted to the jury, and the jury found that appellant's safe did not meet the specifications last enumerated. We conclude, however, that such findings afford no reason why the judgment should have been set aside, even though in conflict with the findings upon the warranty actually set up in the pleading. It would be useless for us to discuss or cite authorities in support of the long-settled rule that evidence developed upon trial in support of issues of fact not made by the pleading should not be referred to the jury for their findings thereon. When such issues of fact are submitted when not raised by the pleading, the jury's conclusions thereon may and should be ignored by the trial court, and will be by this court.

[3] Under the proposition originally stated it is further urged that the findings of the jury upon the issues presented by appellant's third defense are so conflicting and contra-

dictory that the court's judgment cannot be sustained. Appellant's third defense is that it would have canceled the policy before the burglary, as it had the right to do upon five days' notice to the assured and a return of the unearned premium, had appellees' cashier truthfully answered appellant's agent's letter inquiring of the character of their safe. As shown at another place in this opinion, Carl Tygert, appellees' cashier, purporting to act for appellees, did, in answer to a query from appellant's general agent as to whether the outer door of appellees' safe was reputed to be of solid steel, reply that it was of solid steel 4½ inches thick. The jury found in response to appropriate questions that the safe door was not of solid steel 4½ inches thick, and that, if Verschoyle, appellant's general agent, had known the real character of the safe, or had known that Tygert misstated its true character, in responding to Verschoyle's letter, Verschoyle would, under the provision of the policy authorizing him to do so, have canceled the insurance and returned the unearned premium. Bearing on the issue, it is to be remembered that the letter inquiring concerning the safe and Tygert's answer thereto were both written after the issuance and delivery of the policy. It is thus obvious that the findings of the jury in the respects stated are conflicting. But it is urged that such conflict is immaterial as matter of law, for the reason that after the policy of insurance was issued and delivered any statements made by the insured to the company in good faith in response to the company's request for information, and not required by the policy to be made, cannot affect the rights of the assured thereunder, unless the assured agrees, for considerations other than those originally inducing the issuance of the policy, that they shall do so. The principle announced is a well-settled rule of law, and is applicable in all respects to the case at bar. The policy contains no provision imposing upon the assured the duty to make such statements, nor does it appear from the evidence that any right, privilege, or benefit not granted by the original contract of insurance was conferred upon the assured in consideration of the statement requested and given and sought to be made a warranty by appellant. As we have said, the policy was not issued upon an application by the assured, but was issued at the request of C. R. Rea, an insurance agent who knew the true character or specifications of the safe, and upon whom appellant relied for information in' that respect. Having relied upon the statements furnished by Rea, appellant, as against appellees, is not entitled after loss to defeat payment by showing that the statements of fact contained in the policy are misstatements, and to establish that issue by statements made by the assured after the policy was issued, and after all concerned had finally acted and adjusted their respective rights. This is particularly

true when the request for information contains no warning to the assured that such information may be used, in case of loss to defeat payment, without affording opportunity of rearranging same to meet the changed condition, but, on the contrary, leaves the assured in fancied security until a loss actually occurs. The rule of law invoked is sustained in Liverpool & London & Globe Ins. Co. v. Stern, 29 S. W. 678, and Fire Ass'n of Phila. v. Bynum, 44 S. W. 579. In the case last cited it is said:

"The insurance was effected without a written application. We think that when plaintiff was afterwards asked to make such an application, and he did so, it did not relate back and become a part of the original contract. As we have stated, it might have become the basis of a new contract, for the continuance of the policy, in consideration of the company's not exercising its right to cancel, but this was not set up or claimed. The policy went into force without any application. The signing of an application afterwards, containing statements of certain facts, cannot be said to have induced the issuance of the policy sued on."

The editors of L. R. A. state the rule to be that:

"If there is no application, or if the answers are written in the application by the agent on his own knowledge or authority, without questioning the applicant, or if some of the questions are left unanswered in the application, or the answers given are incomplete, the company is generally held estopped to set up a forfeiture on the ground of falsity of such answers as are written by its agent, or on the ground of failure of the insured to answer questions material to the risk." People's Fire Ins. Ass'n v. Goyne, 79 Ark. 315, 96 S. W. 365, 9 Ann. Cas. 373, 16 L. R. A. (N. S.) 1180.

See note, page 1243, collating and annotating cases from numerous jurisdictions. The rule just stated is of peculiar significance in this case when it is recalled that the evidence shows that some one in the office of appellant, with authority to do so, prepared and delivered the policy to C. R. Rea without questioning appellees in reference thereto, or demanding an application from them, but acted in that respect wholly upon its own knowledge and authority, or that of Rea.

[4] While we think what we have just said is conclusive of the issue under discussion, at the same time we think that the jury's finding that Tygert was without actual authority to make the representation that he did make in the letter is supported by the evidence, and that the evidence further supports the conclusion of law on our part that in making the statements he did Tygert was not acting within the apparent scope of his authority. Giving to the position of cashier the broadest authority fairly inferable from the term, it would not, clearly, comprehend as a presumption of law the authority to bind his principal with reference to the specifications or other details of the construction of a safe used by appellees in their business, and concerning which it is not shown that he had any actual knowledge and certainly concerning which his profession or the ca-

pacity in which he is employed imports no knowledge.

[5] The foregoing reviews specifically the several points urged by the appellant in support of the proposition that the findings of the jury are so conflicting as not to support the judgment rendered by the court thereon. Counsel for appellees presents as a further counter proposition that all of the claimed conflicts and contradictions urged by appellant are wholly immaterial to the validity of the judgment by reason of the fact that appellant's general agent, Verschoyle, inspected the safe immediately after the burglary, secured the details of the construction and character of the safe, and thereafter promised appellees that the loss would be paid, and, as an incident to such adjustment, exhibited a placard in a show window in the city of Dallas announcing that the loss had occurred February 15, 3 a. m. and had been adjusted the same day at 11:30 a. m., whereby appellees' breach of any warranty contained in the policy was, as matter of law, waived. The jury found the facts as stated in the proposition, and the finding has support in the evidence. The rule asserted is abundantly sustained by the decisions of our appellate courts, and a discussion of the reason for the rule would be profitless, and for that reason we content ourselves with citing a few of the cases. Georgia Home Ins. Co. v. Moriarty, 37 S. W. 628; German-American Ins. Co. v. Evants, 25 Tex. Civ. App. 300, 61 S. W. 536; Couch v. Home Protective Fire Ins. Co., 32 Tex. Civ. App. 44, 73 S. W. 1077; Co-operative Ins. Ass'n v. Ray, 138 S. W. 1122. But it is urged by appellant that the rule stated has no application, because it is provided in the policy sued on that "no condition or provision of this policy shall be waived," except by a designated officer in a designated way. The policy does so provide. Such provision does not affect the rule in case of a general agent with such authority as Verschoyle had, such as to contract for insurance and issue and deliver policies. In Wagner & Chabot v. Insurance Co., 92 Tex. 549, 50 S. W. 569, it is said concerning a clause in a policy that none of its provisions could be waived except by designated officers, and then in writing, just as appellant's policy does, that "an agent who has the power to make the contract of insurance, to issue the policy, and, in fact, exercise the highest authority which the law confers upon the corporation, stands in the place of the corporation itself, and that, having the authority to contract, he, no more than the corporation, can be bound to place his contract in writing because it is a limitation upon the exercise of the authority conferred upon him." See, also, Continental Ins. Co. v. Cummings, 98 Tex. 115, 81 S. W. 705; Sun Life Ins. Co. v. Phillips, 70 S. W. 603; Continental Fire Ass'n v. Norris, 30 Tex. Civ. App. 299, 70 S. W. 769; Washington Life Ins. Co. v. Berwald, 72 S. W. 440; British American Assur. Co. v. Francisco, 123 S. W. 1144; Delaware Ins. Co. v. Hill, 127 S. W. 283; Cooperative Ins. Ass'n v. Ray, 138 S. W. 1122; Texas Nat. Fire Ins. Co. v. White, Blakeney & Fuller D. G. Co., 165 S. W. 118; Western Assur. Co. v. Hillyer-Deutsch-Jarratt Co., 167 S. W. 816; Commercial Union Assur. Co. v. Hill, 167 S. W. 1095. What we have just said applies to the issues presented by appellant's proposition under fourth, sixth, thirteenth, and sixteenth assignments of error, for which reason that proposition will not be discussed. All other assignments of error contained in the brief present in different form the same issues herein discussed, and for that reason will not be further considered. Finding no reversible error in the judgment of the trial court, it is affirmed.

[6] Appellees however, in the court below moved the court to allow them as damages 12 per cent. on the amount of the judgment rendered, and $500 as attorney's fees, agreed by all concerned to be reasonable, which the court refused to do. The action of the court thus stated is presented by a cross-assignment of error which it is necessary for us to discuss, and is asserted to be erroneous, for the reason that appellees are entitled to the damages and the attorney's fee by force of article 4746, R. S. 1911. This article provides, in substance, that 12 per cent. on the amount of the loss and a reasonable attorney's fee for prosecuting the claim against the defaulting company shall be paid the assured whenever "the life insurance company, or life and accident, health and accident, or life, health and accident company liable therefor shall fail to pay the same," etc. In support of the contention it is urged that the purpose of the Legislature was to penalize every company the name of which included the words "life," "health," or "accident," or a combination of two or more of the words, regardless of whether the loss was on something other than life, health, or accident policies. We conclude that the construction sought to be placed upon the statute is erroneous. The statute did not, prior to 1909, include accident companies. In that year, however, it was amended in order to meet the rule announced in Fidelity & Casualty Co. of New York v. Dorough, 107 Fed. 389, 46 C. C. A. 364, afterwards adopted by the appellate courts of this state in Ætna Life Ins. Co. v. Parker & Co., 96 Tex. 287, 72 S. W. 168, 580, 621; Id., 30 Tex. Civ. App. 521, 72 S. W. 621. In Dorough's Case it was ruled that the statute then existing which only enumerated life or health insurance companies, did not, in the legislative mind, include accident companies. Such conclusion was based largely upon other provisions of our statutes defining life or health insurance companies and accident companies, and which definitions are now to be found in article 4724, Vernon's Sayles' Stats. 1914, without material change, if any at all. There a "life insurance company" is defined to be one which agrees to pay a sum of money "condi-

tioned on the continuance or cessation of human life or * * * for the payment of endowments or annuities." A "health insurance company" is there defined to be one which agrees to pay a sum of money "upon loss by reason of disability due to sickness or ill health." And an "accident insurance company" is there defined to be one that agrees to pay a sum of money "upon the injury, disablement or death of persons resulting from traveling or general accidents by land or water." These definitions were said by the court in the case cited to indicate plainly a distinction between accident insurance companies, on the one hand, and health and life insurance companies, on the other, and concluded for that reason that life and health insurance companies did not include accident companies, assigning as a reason that each character of insurance was distinctive, and the purpose of the statute was to penalize the companies, not as such, but for their failure to pay losses of the character indicated by the words used and as defined by other provisions of the statute. The policy in this case agrees to indemnify appellees against loss to property by burglary, and is what is commonly known as liability insurance. The only definition found in our statutes defining liability or burglary insurance is article 4922, Vernon's Sayles' Stats. 1914, which is a part of chapter 12, authorizing the incorporation of mutual companies insuring against loss by burglary, etc. Such company is there said to be "any insurance company organized under the laws of this state, or any other state, for the purpose of insuring against loss or damage resulting from burglary and robbery, or any attempt thereat, and securing against the loss of money and securities in course of transportation. * * *" Further, it is the common knowledge of all that burglary insurance is what it is defined to be by the statute quoted. Adopting, then, the reasoning in Dorough's Case, together with our statutory definition of accident insurance companies, it seems clear that the Legislature did not intend that companies doing a liability or burglary insurance business should also pay the damages and attorney's fees upon failure to pay such loss upon demand. The fact that appellant was doing both an accident and burglary or liability business, as indicated by its name, does not, as urged by appellees, have any bearing upon the question. It is the distinctive kind of losses pointed out and enumerated by the statute that is required to be paid promptly, and not every kind of loss against which the company may insure. Such construction would result in palpably unfair discriminations, when it is considered that either life, health, or accident companies might engage in such business under names not indicating the class of insurance involved, and yet escape the penalty intended particularly for such class.

Finding no error in the judgment of the court as presented by appellees' cross-assignment, the judgment in that respect is also affirmed.

Affirmed.