## STANDARD ACC. INS. CO. v. SOUTH-WESTERN TRADING CO. et al.

### No. 11385.

Circuit Court of Appeals, Fifth Circuit.

March 19, 1946.

W. L. Kemper, of Houston, Tex., for appellant.

Fred R. Switzer, of Houston, Tex., for appellees.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

McCORD, Circuit Judge.

The Southwestern Trading Company, a partnership, engaged in buying and selling hides in the City of Houston, Texas, brought this suit against the Standard Accident Insurance Company to recover losses alleged to have been suffered from burglary.

The Insurance Company, through its salesman, issued to the partnership a mercantile open stock policy of burglary insurance on June 1, 1943, in the amount of $5,000. On August 24, 1943, during the night, the premises of the Trading Company were entered and certain articles were alleged to have been stolen. The burglary was discovered the following morning and the police were notified.

On September 15, 1943, proof of loss was signed by the partners of the Trading Company and delivered to insurer, which showed a loss, among other things not contested here, of 567 hides of the value of $6.13 each, or a total of $3,476.71. On the same day the partnership advised Larsen & Company, an agent of the Insurance Company, by letter, the way and manner by which they arrived at the figure of $6.13 as the value per hide claimed to have been stolen and as shown by the proof of loss.

The premises were again burglarized on September 15, 1943, but no hides were claimed to have been taken in this second burglary.

On October 18, 1943, an amended and verified proof of loss was submitted to the Insurance Company showing the loss of 663 hides instead of 567, as originally claimed, and amounting to $4,064.19.

While the Insurance Company as a defense charged the Trading Company with failure to comply with the record warranty clause in the policy of insurance, the case went to trial almost wholly on the issue that no hides had been stolen. The trial court trying the issues without the intervention of a jury found that the Trading Company kept a regular set of books within the meaning of the policy of insurance, and further that the Insurance Company had waived compliance with the warranty clause in the policy. Judgment went for the Trading Company for the value of the 663 hides.

The Insurance Company here relies upon the non-waiver provision in the policy of insurance, and also upon non-waiver provisions in the proof of loss as originally filed and as amended.

The insurer first became familiar with the method of bookkeeping employed by the Trading Company shortly after the burglary occurred in 1943. At that time an auditor for the Insurance Company went over the books of the Trading Company and nothing was said and no complaint was made concerning the failure of the books to comply with the bookkeeping provisions of the policy. On September 15, 1943, the Trading Company furnished the Insurance Company, at the request of one of its adjusters, a detailed statement showing how the value of the hides was arrived at, and still nothing was said and no complaint was made by the insurer as to the books or the method of reporting the loss. Before the detailed statement was made out and delivered to insurer, an adjuster was shown the method by which the loss was ascertained and he made no objection. Four or five months later, Dimeola, an auditor for the Insurance Company, requested and obtained permission to inspect the general ledger of the Trading Company. At no time during the entire negotiations concerning the adjustment of the loss, from the date of the loss until as late as February 13, 1944, did the Insurance Company deny liability on the policy or assert that the books and proof of loss were inadequate.

On the non-waiver defense, the trial court held that the action of the Insurance Company during the negotiations after the loss occurred constituted a waiver of the following clause of the insurance contract:

"The company shall not be liable for loss or damage unless books and accounts are regularly kept by the assured in such manner that the exact amount of loss can be accurately determined therefrom by the company."

▮ In Home Insurance Company of New York v. Roberts, 129 Tex. 178, 100 S.W.2d 91, 93, the Supreme Court of Texas held:

"It is now well settled in Texas that a provision in an insurance policy that no condition or stipulation shall be waived except by a written endorsement attached to the policy is ineffectual to prevent a parol waiver of such provisions and conditions by an authorized agent acting within the scope of his authority."

In Hanover Fire Insurance Company v. Slaughter, 111 S.W.2d 362, 364, the Texas Court of Civil Appeals stated:

"The nonwaiver paragraph in the policy and the nonwaiver agreement to which the appellee affixed his signature, at the request of the adjuster, before he made an investigation, do not, as a matter of law, entitle appellant to a directed verdict for a failure to furnish proof of loss, since, in our opinion, the evidence presents a fact issue on the questions of waiver and estoppel which should be submitted to the jury. * * *

"In Occidental Fire Insurance Company v. Fort Worth Grain & Elevator Co. [by the Texas Court of Civil Appeals], 294 S.W. 953, writ refused, the court held that notwithstanding the standard form of the policy and the nonwaiver agreement signed by the insured after the loss, that the insurer could, by its acts and conduct, waive the breach of the warranties and concurrent insurance clauses and estop itself from urging such breach as a defense."

If the decisions of the Texas courts, just adverted to, announce the correct rule of law, then clearly the trial court's finding that a waiver existed was supported by abundant evidence. German-American Insurance Company v. Evants, 25 Tex.Civ. App. 300, 61 S.W. 536; Piedmont Fire Insurance Company v. Ladin, Tex.Civ.App., 174 S.W.2d 991; Occidental Fire Insurance Company v. Fort Worth Grain & Elevator Company, Tex.Civ.App., 294 S.W. 953, 957; Equitable Life Assurance Society v. Ellis, 105 Tex. 526, 147 S.W. 1152, 152 S.W. 625; Home Insurance Company of N. Y. v. Roberts, 129 Tex. 178, 100 S.W. 2d 91.

▮ We prefer, however, to rest our decision upon a compliance with the insurance contract by the Trading Company as to the keeping of the books. The monthly turnover in hides in the plaintiff's business, the evidence shows, varies from 3000 to 6000. The classifications of these hides change almost daily, depending upon gain or loss of weight, which controls the value. However, the warranty clause required no designated system of bookkeeping. The books showed the hides purchased by the plaintiff, the date of purchase, the number purchased, and from whom purchased, the total weight, and the price paid. They also showed the number shipped, the buyers,

the grades, and the prices received. We think the books substantially complied with the conditions imposed in the contract of insurance. Moreover, the books as kept enable one of ordinary intelligence to ascertain with reasonable certainty the amount and value of the goods stolen. Home Insurance Company et al. v. F. C. Flewellen Produce Co., Tex.Com.App., 247 S.W. 833, and cases cited; New Amsterdam Casualty Company v. Iowa State Bank, 8 Cir., 1 F.2d 196; Massachusetts Fire & Marine Co. v. Schneider, 5 Cir., 28 F.2d 658.

We have considered every assignment of error and every contention made by the Insurance Company, and we find no reversible error in the record.

The judgment is affirmed.

SIBLEY, Circuit Judge (concurring).

I do not think there was any waiver of the condition that books should be kept from which the amount of the loss can be determined. This is so for two reasons: It was necessary to examine and re-examine the books in order to find out what could be determined from them, and such examination could not be a waiver; and there was also a special non-waiver agreement on the faith of which the examination proceeded.

I concur in the conclusion that the books showed all that any set of books could show about green hides that were being processed and changing in weight, class, and value by reason thereof every day.