## OCCIDENTAL FIRE INS. CO. v. FORT WORTH GRAIN & ELEVATOR CO.

(No. 11735.)

Court of Civil Appeals of Texas. Fort Worth. April 2, 1927.

Rehearing Denied May 7, 1927.

1. Trial ⟨key⟩156(3)—Demurrer admits truth of facts evidence reasonably tends to prove.

Demurrer to plaintiff's evidence admits truth of every fact which evidence reasonably tends to prove.

2. Insurance ⟨key⟩335(2, 4) — Noncompliance with requirements that insured make inventories and keep them in fireproof safe would defeat recovery on policy, unless waived.

Noncompliance with record warranty clause, requiring insured to make itemized inventories of stock, and keep them and other books in fireproof safe while not open for business, would defeat recovery on fire policy declaring such requirements material to risk, unless waived by insurer.

3. Insurance ⟨key⟩396(6)—Insurer, whose adjuster induced insured's manager to take time from business to make further proof of loss, held to have waived known breaches of record warranty and concurrent insurance clauses.

Insurer, whose adjuster continued efforts to determine amount of losses, after being fully informed of insured's breach of record warranty and concurrent insurance clauses, and induced insured's manager to take valuable time from business in order to get up further proof of value of machinery destroyed by promise to pay losses sustained, held to have waived such breaches.

4. Insurance ⟨key⟩288(2)—Maximum. concurrent insurance stipulation in rider held not condition precedent to validity of fire policy.

Stipulation in fire insurance policy rider, fixing maximum of concurrent insurance, held merely contractual, giving insurer privilege of avoiding policy for breach thereof, not a condition precedent, on performance of which validity of policy in its inception depended.

5. Insurance ⟨key⟩375(2)—Insurance "adjuster" may also be authorized to bind insurer by waiver of insured's breach of warranty.

One employed as insurance adjuster may also be vested with authority to bind insurance company by waiver of insurer's breach of warranty to same extent as any other representative of company (citing Words and Phrases, Second Series, "Adjuster").

6. Insurance ⟨key⟩92—Evidence held prima facie sufficient to show adjuster's apparent authority to bind insurer by waivers of breach of record warranty and concurrent insurance clauses.

Evidence held sufficient prima facie, in absence of proof to contrary, to show that it was within apparent scope of adjuster's authority as insurer's representative to bind in-

surer by waivers of insured's breach of record warranty and concurrent insurance clauses and adjuster's agreement to pay losses claimed by insured.

**7. Evidence ⚏467—Proof of adjuster's authority to waive breach of record warranty and concurrent insurance clauses held not to violate parol evidence rule.**

Proof of insurance adjuster's authority to waive insured's breach of record warranty and concurrent insurance clauses *held* not to violate parol evidence rule, notwithstanding policy stipulation that no person should be deemed insurer's agent in any matter relating to insurance, unless duly authorized in writing; waivers occurring after execution and delivery of policy.

**8. Insurance ⚏396(6)—Nonwaiver agreement held not to preclude subsequent agreement to pay losses in consideration of further efforts to furnish additional proof.**

Execution of nonwaiver agreement by insured's manager as its representative did not preclude him and insurance adjuster from making subsequent agreement for payment of losses in consideration of further efforts to furnish additional proof of loss.

**9. Insurance ⚏396(6).—Agreement to pay losses in consideration of efforts to furnish additional proof bound parties to perform no services not already required by fire policy.**

Agreement by adjuster that insurer would pay losses in consideration of further efforts by insurer's manager to furnish additional proof thereof did not bind insurer or insured to perform any service they were not already bound to perform by terms of policy, which expressly stipulated that insured would furnish proof of loss, and implied that insurer would investigate losses.

**10. Insurance ⚏396(6)—Expenditure of valuable time by insured's manager to make further proof in reliance on adjuster's promise to pay losses constituted "estoppel," supplying absence of valuable consideration.**

Expenditure of valuable time by insured's manager to get up further proofs of loss, in reliance on adjuster's promise to pay losses, constituted estoppel, which supplied absence of valuable consideration for promise to pay and agreement involved therein to waive insured's breach of record warranty and concurrent insurance clauses.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel.]

**11. Insurance ⚏385—Statutes as to form of policies and indorsements held inapplicable to waiver of adjuster's breach of record warranty and concurrent insurance clauses (Rev. St. 1925, arts. 4886, 4889).**

Provision of Rev. St. 1925, arts. 4886, 4889, as to standard form of policies and clauses of indorsement thereon, *held* not to preclude insured from setting up adjuster's waiver of breach of record warranty and concurrent insurance clauses of fire policy.

**12. Limitation of actions ⚏127(4)—Supplemental petition alleging insertion of concurrent insurance clause in policy by mutual mistake, accident, or fraud held not to state barred cause of action for reformation, in absence of record showing that allegations were first made in such petition.**

Supplemental petition alleging that stipulation in fire policy rider, fixing maximum amount of insurance, was inserted by mutual mistake, accident, or insurer's fraud, *held* not to state new cause of action, barred by limitations, for reformation of policy and enforcement thereof as reformed, in absence of proof in record that such allegations were made for first time in such petition.

**13. Limitation of actions ⚏40(1) — Limitations held inapplicable to plea in supplemental petition that concurrent insurance clause was inserted in policy by mutual mistake, accident, or fraud.**

Statute of limitations *held* inapplicable to plea in supplemental petition, merely by way of avoidance of defense of insured's breach of concurrent insurance clause, that it was inserted in rider by mutual mistake, accident, or insurer's fraud.

**14. Limitation of actions ⚏40(1)—Limitations are inapplicable to facts alleged merely to avoid defense and unnecessary to make out prima facie case.**

Statutes of limitations are applicable to causes of action, not facts alleged merely to avoid some defense thereto, and not necessary to make out prima facie case.

**15. Reformation of instruments ⚏45(14) — Evidence held to support plea that concurrent insurance clause was included in fire policy by mutual mistake.**

Evidence, in suit on fire policy, *held* sufficient, in absence of contrary proof, to support plaintiff's plea that rider containing stipulation fixing maximum amount of concurrent insurance was included in policy by mutual mistake.

**16. Insurance ⚏372—Whether concurrent insurance clause was included in fire policy by mutual mistake held immaterial, in view of insurer's waiver of breach thereof.**

Whether rider containing stipulation fixing maximum amount of concurrent insurance was included in fire policy by mutual mistake *held* immaterial, in view of insurer's waiver of insured's breach thereof through adjuster as insurer's agent.

Appeal from District Court, Tarrant County; Jas. E. Mercer, Judge.

Action by the Fort Worth Grain & Elevator Company against the Occidental Fire Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Read, Lowrance & Bates, of Dallas, for appellant.

Capps, Cantey, Hanger & Short, and J. W. Stitt, all of Fort Worth, for appellee.

---

⚏For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

DUNKLIN, J. The Occidental Fire Insurance Company issued to the Fort Worth Grain & Elevator Company, a partnership firm composed of J. R. Stitt, F. W. Payne, and Mrs. E. E. Payne, a fire insurance policy covering a stock of grain and feed stuff and movable machinery used in the preparation of the feed stuff for market, and covering also office furniture, fixtures, and supplies used in the conduct of the business then operated by the firm as manufacturers of, and dealers in, such commodities. The maximum amount of insurance upon the stock of merchandise was $2,000, and $500 was the maximum insurance on the machinery and office fixtures and furniture. The policy bore date of August 29, 1914, and the insurance was for one year beginning on that date and ending August 29, 1915. On October 27, 1914, the property so insured was destroyed by fire, and this suit was instituted by the insured to recover on that policy. From a judgment in favor of plaintiffs for the full amount of insurance, with interest thereon to the date of trial, the defendant has prosecuted this appeal.

After plaintiffs had introduced their evidence in chief and rested, the defendant filed a demurrer to the evidence, upon the ground that it was insufficient to warrant a recovery upon the cause of action alleged. In that connection the defendant moved for an instructed verdict in plaintiffs' favor for the amount of the premiums which they had paid for the policy, and with interest thereon, which the defendant had in its pleadings tendered to the plaintiffs, with a motion for a further instruction to the jury to return a verdict in favor of the defendant as against plaintiffs' suit to recover on the policy. The court overruled that motion, and instructed a verdict in favor of plaintiffs, and the judgment rendered was upon a verdict returned in obedience to that instruction.

[1] The effect of the demurrer to the evidence was to admit the truth of every fact which the evidence reasonably tended to prove.

[2] One of the defenses urged was the failure of the plaintiffs to comply with what is termed in the policy as the record warranty clause, which required the insured to make out an itemized inventory of stock on hand within certain periods of time, and to keep such inventories, together with all of the books, in a fireproof safe while the house was not actually open for business; and in connection with those requirements the policy contained a clause that the same were material to the risk and to the insurance as well as any loss or damage happening to the property described in the policy. The proof showed that the insured failed to comply with those requirements of the policy, and such failure would operate to defeat a recovery, unless the same was waived by the company; and that issue will be hereinafter discussed.

At the time the policy was issued the insured then held other insurance policies in the aggregate of $11,000, of which amount $5,500 was upon their stock of merchandise, and $5,500 was upon the machinery, furniture, and fixtures. After the issuance of the policy in controversy, the insured then held insurance in the following aggregate sums: $7,500 on the stock, and $6,000 on the machinery, furniture, and fixtures. The policy contained what is termed a "rider," pasted on the face of the instrument, and made a part of it, reading as follows:

"$10,000.00 total concurrent insurance permitted, including this policy, to be applied as follows: $7,000.00 on the stock; $3,000.00 machinery, furniture and fixtures."

The excess of concurrent insurance carried by plaintiff over and above the maximum fixed by the rider was urged by defendant as another special defense to the suit; and whether or not that defense was waived is also to be determined.

The policy contained these provisions:

"This policy is made and accepted subject to the stipulations printed on the back thereof, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached. * * *

"In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company. * * *

"The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examinations under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for."

No such instrument in writing as referred to in those provisions was written in, or attached to, the policy.

Another provision in the policy reads as follows:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof."

Those provisions of the policy were invoked by defendant in support of the special defenses noted above; and whether or not such defenses were overcome by facts alleged by plaintiffs in reply thereto, and established by proof hereinafter noted, will be hereinafter determined.

[3] Plaintiffs relied upon a plea of waiver and estoppel on the part of defendant to urge both of those special defenses. We shall not attempt to set out in full the proof introduced to support the plea, as so to do would unduly extend this opinion. We deem it sufficient to say that the evidence established, prima facie, the following facts: J. R. Stitt was the manager of plaintiffs' business, and after the fire Mr. J. D. Buckalew was employed by the defendant as its agent to "adjust" the losses sustained by the plaintiffs as a result of the fire. About three days after the fire Buckalew called upon Stitt, and requested him to execute what is termed a nonwaiver agreement, reading as follows:

"It is hereby mutually understood and agreed by and between Fort Worth Grain & Elevator Company, by J. R. Stitt, of the first part and the Fire Insurance Company of Philadelphia and other companies signing this agreement, parties of the second part, that any action taken by the said parties of the second part in investigating the cause of the fire or investigating and ascertaining the amount of loss and damage to the property of the parties of the first part caused by fire alleged to have occurred on October 27, 1914, shall not waive or invalidate any of the conditions of the policies of the parties of the second part, held by the parties of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement."

"The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of the loss or damage, without regard to the liability of the parties of the second part.

"Signed in duplicate this 31st day of October, 1914. Fort Worth Grain & Elevator Company, by J. R. Stitt, Manager. Williamsburg City Fire Ins. Co., by J. D. Buckalew, Adjuster. Occidental Fire Ins. Co., by J. D. Buckalew, Adjuster. Alliance Insurance Co., by J. D. Buckalew, Adjuster. Germania Fire Ins. Co., by J. D. Buckalew, Adjuster. The Home Insurance Company, by J. D. Buckalew, Adjuster. German Alliance Company, by J. D. Buckalew, Adjuster."

Appellant is a foreign corporation, and, the firm of Vera-Reynolds & Co. were its local agents who issued the policy. Before signing the nonwaiver agreement, Stitt went to Mr. Vera, of that firm, and asked him for advice as to whether or not he (Stitt) should execute it. To that request Mr. Vera replied:

"Well, this nonwaiver is a matter of just holding things in abeyance until they could ascertain the cause of the fire. As far as we know, that fire caught from a spark from an engine; as far as you are concerned, it will not affect your settlement; your policy will be paid."

Mr. Vera further advised that the thing to do was to sign the nonwaiver, as Mr. Buckalew had requested. Stitt then executed the agreement. After signing the agreement, he submitted to five or six oral examinations by Mr. Buckalew, under oath, with respect to the losses plaintiffs had sustained by the fire, involving a showing of the amount and different kinds of property destroyed, the amount of salvage therefrom, and the amount realized from the sale of salvage which Buckalew had agreed might be disposed of by sale. After several examinations had occurred, Buckalew requested still another examination, in order to fully ascertain the amount of the losses.

The fire which destroyed the building originated in an ice cream cone factory, which was adjacent thereto, and owned by a Mr. Wood. Mr. Wood informed Stitt that Buckalew had stated that the insured would not be paid anything on the policy except at the end of a lawsuit. When Stitt met Mr. Buckalew, he informed him of that report, whereupon Buckalew denied that he had ever told Mr. Wood anything of the kind, and that the company would pay the insured according to the losses sustained, and that the purpose of Buckalew's efforts was to ascertain the value of the property that had been destroyed. Thereupon Stitt, acting for the plaintiffs, told Buckalew that, if that was true, he would give him all the information that he could, and all the time that was necessary to procure the information. Following some further discussion, Buckalew requested Stitt to procure catalogues listing new machinery, and also requested Stitt to get up a tabulated statement of the salvage. Relying upon Buckalew's promise for the payment of the losses, Stitt procured and furnished to Buckalew the information so requested, consisting of catalogues showing the price of new machinery and tabulated statements showing the amount of salvage that was hauled away after the fire. In order to get that information, he made several trips to different parts of the city to find the catalogues and two trips to the town of Arlington in order to procure from the man who bought the salvage and hauled it away a tabulated statement of the amount thereof. It required several days' time on the part of Stitt to gather this information. The insured were then conducting their business in temporary quarters to which they had moved after the fire, and the time so lost by Stitt as manager of the busi-

ness was valuable to the plaintiffs. After furnishing the catalogues, Stitt submitted to another examination by Buckalew relative to the machinery lost in the fire. That was during January, 1915. The cash market value of the stock on hand destroyed by the fire was $8,176.14. The cash market value of the office furniture and fixtures was $638.14; and the cash market value of the machinery so destroyed, including the cost of installing, was $6,057.11. During the month of November, 1914, Stitt mailed to the company proof of the losses sustained by the fire, such proof consisting of an itemized statement of the machinery, stock, and furniture that was burned, and there is no showing in the record that the company made any objection to the sufficiency of the proof so submitted.

The insured did not take an inventory of the property covered by the insurance policy in the manner and at the time required by the terms of the policy, nor was there a complete set of books showing all purchases and sales, but a record was kept in the form of tickets showing the amount of purchases and sales and some books, and from those books and other memoranda kept, which were taken from the safe after the fire, Stitt was able to make out a correct list of the property destroyed. Immediately after Buckalew undertook to adjust the losses, and several times during the taking of proof, he was fully informed of the failure of the insured to keep the inventories referred to, in accordance with the requirements of the policy, and, notwithstanding that information, Buckalew continued his efforts to determine the amount of the losses. Buckalew took a regular form of a fire insurance policy, and discussed with Stitt the different clauses contained therein, and Stitt informed him, not only of his failure to comply with the record warranty clause, but also of the fact that the amount of concurrent insurance carried was in excess of the maximum stipulated in the policy. After the issuance of the policy and before the fire, Vera, of the Vera-Reynolds Company, local agents of the insurer, was also informed of the extent of the concurrent insurance carried by the insured, and made no objection thereto. On the contrary, he solicited from Stitt an opportunity to carry all of such additional concurrent insurance. Before the issuance of the policy, Stitt left with Vera the form of policy he desired, which did not contain the concurrent insurance clause in the policy in question. When the policy was drawn up, that clause was inserted in the form of the rider attached thereto without Stitt's knowledge or consent, and he did not discover the presence of the rider until after the fire. Although Stitt did not specifically so testify, his testimony, reasonably construed, indicates that he would not have accepted the policy with the rider had he known of its presence at the time he received it and placed it in his desk without reading it.

There was no other evidence tending to support the allegation in plaintiffs' pleading that the inclusion of the rider in the policy resulted from mutual mistake, accident, or fraud on the part of the insurer.

[4] The proof shown above that, when Buckalew induced Stitt to incur the loss of time from his business in order to get up further proof of the value of the machinery destroyed, by promising that the defendant company would pay the losses sustained, this distinguishes this case from the companion cases growing out of the same fire, to wit, Germania Fire Ins. Co. v. Fort Worth Grain & Elevator Co. (Tex. Com. App.) 274 S. W. 123, and German Alliance Ins. Co. v. Fort Worth Grain & Elevator Co. (Tex. Com. App.) 269 S. W. 430, and Home Ins. Co. v. Fort Worth Grain & Elevator Co. (Tex. Com. App.) 269 S. W. 432, in each of which cases it was held that the insurance company could not be held to have waived the breach of the record warranty clause, in the absence of proof that Buckalew knew of those breaches at the time he agreed in behalf of the company to pay the insured the losses sustained. The stipulation in the rider fixing the maximum of concurrent insurance was merely contractual, giving the insurer the privilege of avoiding the policy for a breach of that agreement. It was not a condition precedent, upon the performance of which the validity of the policy in its inception depended. Reliance Ins. Co. v. Dalton (Tex. Civ. App.) 178 S. W. 966; Ins. Co. v. Levy & Rosen (Tex. Com. App.) 222 S. W. 216.

[5] The cases cited by appellant to support its contention to the contrary, such as Fed. Life Ins. Co. v. Wright (Tex. Civ. App.) 230 S. W. 795; Scottish Union Ins. Co. v. Weeks Drug Co., 55 Tex. Civ. App. 263, 118 S. W. 1086, and others, are clearly distinguishable from the present case, in that the provisions there construed are altogether different from the provisions of the policy in question. Appellant was a foreign corporation, and it does not appear from the record that it had any representative, other than Buckalew, in the state to negotiate with the insured with respect to the claim for the losses sustained in consequence of the fire. The proof showed that Buckalew was appointed by the insurer as its "adjuster." In 1 Words and Phrases, Second Series, p. 115, the following definition is given:

"To 'adjust' an unliquidated claim is to determine what is due; to settle; to ascertain; or, according to Webster, 'to settle or bring to a satisfactory state so that parties are agreed in the result.'"

Several authorities are cited to support that definition. To the same effect is 1 Corpus Juris, p. 1237, and 1 Bouvier's Law Dictionary, p. 137.

In Roberts v. Ins. Co., 94 Mo. App. 142, 72 S. W. 144, the following was said:

"The adjuster of the fire insurance company, as to the settlement of losses, is the representative of the company; and his acts, within the scope of his authority, are the acts of the company. McCollum v. Ins. Co., 67 Mo. App. loc. cit. 69, 75."

However, other authorities are to the effect that ordinarily the authority of an insurance adjuster does not extend further than to ascertain the amount of losses, and that he does not have the authority to waive a forfeiture of the policy for breach of warranty, in the absence of express authority to the contrary.

In 26 Corpus Juris, p. 290, the following is said:

"The apparent scope of the authority of an insurance adjuster does not extend beyond settling the loss after it has occurred. While he may therefore waive any provisions of the policy respecting the form or time of proof of loss, he has not as a matter of law power or apparent authority to waive a condition not connected with the business he is employed to accomplish, or, to waive a forfeiture for breach of warranty or condition subsequent and reinstate a policy. If he has such a power it must rest on an express authorization and must be proved if relied upon. However, the rule that an implied waiver or estoppel arises where the insurer, with knowledge of the facts giving rise to the forfeiture, compels insured to furnish proof of loss at his labor or expense, or otherwise proceeds to adjust the loss, is applicable where these acts are done by an adjuster acting within the scope of his authority, but not where the acts of the adjuster are not within the scope of his actual or apparent authority. Insured does not deprive himself of the right to rely on such acts of the adjuster as constituting a waiver of a forfeiture by signing an agreement with the adjuster that nothing the adjuster may do, say, or write shall in any way be construed as waiving any of the rights or defenses of the insurer, or any conditions or requirements of the policy as to proofs of loss or otherwise. The adjuster cannot by his own stipulation deprive himself of the power to waive a forfeiture, nor can he deprive himself of the power to waive his own stipulation for nonwaiver. The adjuster must be presumed to have power to waive a forfeiture, or, more precisely, to do the acts which constitute an implied waiver or estoppel; but this presumption does not attach where there is no evidence that the particular claim has been placed in his hands for adjustment. Where the insurer refers the insured to an adjuster as the proper person with whom to negotiate, he has power to waive condition of the policy."

In Bond v. Nat. Ins. Co., 77 W. Va. 736, 88 S. E. 389, by the Supreme Court of Appeals of West Virginia, the following was said:

"The instruction proceeds on the theory that because Horkheimer was the insurance company's adjuster, that as such he had the authority not only to make proof of loss, * * * but also to make an agreement binding the company to pay. This is an erroneous notion of the authority and duties of an adjuster for an insurance company. The word 'adjuster,' as applied to insurance companies, has a well-understood meaning."

To the same effect is Colby v. Ins. Co., 37 W. Va. 789, 17 S. E. 303; Ins. Co. v. Griffin (Tex. Civ. App.) 202 S. W. 1014.

[6] Notwithstanding the more restricted interpretation of the term "adjuster," indicated by the authorities last cited, it does not follow that one employed as an adjuster may not also be vested with authority to bind the insurance company by a waiver of a breach by the insured of some warranty on his part relative to his policy of insurance, to the same extent as any other representative of the company. And, in the absence of any proof to the contrary, we believe that the facts and circumstances related above, prima facie, were sufficient to show that it was in the apparent scope of the authority of Buckalew as a representative of the company to bind the company to waivers pleaded by the appellee, and to Buckalew's agreement to pay the losses claimed by the plaintiff. Home Insurance Co. v. Moriarty (Tex. Civ. App.) 37 S. W. 628 (writ of error refused); German-American Ins. Co. v. Evants, 25 Tex. Civ. App. 300, 61 S. W. 536 (writ of error refused); Couch & Gilliland v. Fire Ins. Co., 32 Tex. Civ. App. 44, 73 S. W. 1077.

[7-9] Proof of authority of Buckalew to waive the special defenses pleaded did not violate the parol evidence rule, notwithstanding the stipulation in the policy that "in any matter relating to this insurance no person, unless duly authorized in writing shall be deemed the agent of this company," since the matter of waiver occurred subsequently to the execution and delivery of the policy. And the execution of the nonwaiver agreement by Stitt as a representative of the company did not preclude him and Buckalew from making a subsequent agreement contrary thereto, by the terms of which Buckalew agreed for the company to pay the losses in consideration of the further efforts on the part of Stitt to furnish additional proof of the losses after he had indicated his intention to make no further efforts along that line. It is to be noted in this connection that that agreement did not bind the company or the insured to perform any service additional to what they were already bound to perform by the terms of the policy; it being implied by those terms that the insurer would investigate such losses, and expressly stipulated that the insured would furnish proof of same. Morrison v. Ins. Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63; Ætna Ins. Co. v. Eastman (Tex. Civ. App.) 80 S. W. 255; Fire Ass'n v. Masterson (Tex. Civ. App.) 83 S. W. 49; Ins. Co. v. Eastman (Tex. Civ. App.) 236

S. W. 763; MacKey v. Home Ins. Co. (Mo. App.) 284 S. W. 161; Ætna Ins. Co. v. Fallow, 110 Tenn. 720, 77 S. W. 937; 3 Williston on Contracts, § 1293.

[10] Appellant insists that the waivers pleaded by appellee could have no binding effect because not supported by a valuable consideration. We overrule this contention, since the expenditure by Stitt of valuable time which was lost from his business, in reliance upon Buckalew's promise to pay the losses, constituted an estoppel which took the place of, and supplied the absence of, a valuable consideration passing to appellant for the promise to pay, and which promise involved also an agreement to waive the matters specially pleaded by the appellant to avoid the payment of the policy. 26 Corpus Juris, p. 334, and numerous authorities there cited. 1 Williston on Contracts, § 139; Id., §§ 679 and 691.

[11] Stamped on the back of the policy were the words "Texas Standard Fire Policy." Appellant contends that that indorsement shows that the policy was in the form provided by the state insurance commission, as required by articles 4886 and 4889, Rev. Statutes of 1925, and that therefore no agent of the company had the power to waive any condition of the policy, unless such waiver is indorsed thereon. No proof was offered to show that the form used was the one so prescribed. However, even though the presumption be indulged that such was true, we do not believe that those statutory provisions would preclude the insured from invoking the doctrine of waiver relied on in this case, since those statutes cannot reasonably be construed as having that effect. St. Paul Fire Ins. Co. v. Kitchen (Tex. Civ. App.) 256 S. W. 940, same case by Commission of Appeals, 271 S. W. 893.

[12, 13] By supplemental petition filed February 4, 1921, plaintiffs sought to avoid the stipulations contained in the rider fixing a maximum amount of concurrent insurance, on allegations that the same was inserted in the policy by mutual mistake of the parties or by accident or by fraud of defendant. Thereafter defendant presented a plea of limitation of four years to plaintiffs' suit, upon the theory that, as so amended, the suit was for a reformation of the policy and for enforcement of it as reformed, which was a new cause of action filed more than four years after its accrual. In the first place, there is an absence of proof in the record that plaintiffs' allegations of mistake, accident, and fraud were made for the first time in that supplemental petition. In the second place, that plea was merely by way of avoidance of the defense based on a breach by plaintiffs of the terms of the rider; and therefore the statute of limitation was not applicable thereto.

[14-16] Plaintiffs' cause of action was based on defendant's contract to pay the losses occasioned by the fire. The statutes of limitation are applicable to the cause of action and not to facts alleged merely to avoid some defense thereto, and which are not necessary to make out a prima facie case for plaintiffs. Rutherford v. Carr, 99 Tex. 101, 87 S. W. 815; Stafford v. Stafford, 96 Tex. 106, 70 S. W. 75; Germania Ins. Co. v. Fort Worth Grain & Elevator Co. (Tex. Civ. App.) 271 S. W. 256, and authorities there cited. While the case last cited was reversed by the Supreme Court (274 S. W. 123), the holding of the Court of Appeals on this point was not disturbed. Furthermore, we believe that, in the absence of proof to the contrary, the evidence noted above was sufficient to support plaintiffs' plea that the inclusion of the rider in the policy was the result of a mutual mistake of the parties. Automobile Ins. Co. v. Buie (Tex. Civ. App.) 252 S. W. 295. However, this conclusion is unnecessary to an affirmance of the judgment, in view of our further conclusion that any defense based on a breach of that condition was waived by appellant, acting through Buckalew as its agent, as above noted.

For the reasons indicated, all assignments of error are overruled, and the judgment is affirmed.