## HOME INS. CO. v. LAKE DALLAS GIN CO. et al. *

### No. 12752.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 21, 1933.

Rehearing Denied Feb. 25, 1933.

Thompson, Knight, Baker & Harris, Will C. Thompson, and Sol Goodell, all of Dallas, for appellant.

George M. Hopkins, of Denton, for appellees.

DUNKLIN, Justice.

By this appeal the Home Insurance Company of New York complains of a judgment rendered against it in favor of the Lake Dallas Gin Company and the Denton County National Bank upon a fire insurance policy issued by it.

The property covered by the insurance consisted of certain buildings located in Denton county, together with some of the equipments installed therein and used in the gin-

*Writ of error granted.

ning business of the Lake Dallas Gin Company, the owner, to whom the policy was issued and was made payable and also to the Denton County National Bank, who was a lienholder, as its interest might appear. The policy was issued through Roy F. Oakley, the agent of defendant, who resided and did business in the town of Lewisville, Tex. It was dated August 7, 1930, and insured the property for the terms of one year from and after that date, and the aggregate of insurance on all the different items covered was $3,000; it was signed by Milfred Kurth, president, and countersigned by D. D. McLarry, general agent of the company at Dallas, Tex., and it stipulated that the company should not be liable for an amount greater than three-fourths of the actual cash value of each item of property insured at the time immediately preceding such loss, the damage not to exceed the amount of insurance on each item.

The principal questions presented on this appeal involve the effect to be given certain provisions of the policy relating to forfeiture of the insurance alleged by the defendant, and waiver and estoppel as to those defenses pleaded by the plaintiffs; and following are provisions of the policy together with the adjuster's agreement as to the loss with waiver agreement attached thereto, all of which are involved in those issues:

"It is understood and agreed to be a condition of this insurance that in the event of loss or damage by fire to the property insured under this policy, this company shall not be liable for an amount greater than three-fourths of the actual cash value of each item of property insured by this policy (not exceeding the amount insured on each such item) at the time immediately preceding such loss or damage; and in the event of additional insurance—if any is permitted hereon—then this Company shall be liable for its proportion only of three-fourths of such cash value of each item insured at the time of the fire, not exceeding the amount insured on each such item. * * *

"This policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions printed on back hereof, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements, or conditions as may be indorsed hereon, or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

. Indorsed on the back of the policy are the following:

"In case there be a total loss by fire of any real property insured by this policy, as to such real property so totally destroyed, if a liability shall exist hereunder for such loss, it shall be held and considered, subject to the terms of this policy legally applicable, to be a liquidated demand under article 4929, Revised Civil Statutes of Texas, against this company for the full amount hereof covering such real estate. In all other cases this company shall not be liable beyond the actual cash value of the property at the time of the loss, with proper deductions for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. In so far as any of the property described herein is manufactured property, owned by the manufacturer, this company shall not, as to such property, be liable beyond what it would, at the time of the fire, cost the manufacturer to replace said lost property by manufacture, with expense of delivery to the place of the loss. Said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company, to take all, or any part, of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required of its intention so to do; but there can be no abandonment to this company of the property described.

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy. * * *

"If fire occur, the insured shall protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and

the amount claimed thereon; and, within ninety-one days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of fire; and shall furnish, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the place of fire, stating that he has examined the circumstances and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify.

"The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

Adjuster's agreement to value:

"It is hereby mutually stipulated and agreed, by and between the Home Insurance Company of New York and Lake Dallas Gin Company, Inc., that the total amount of loss and damage by fire on the twenty-first day of October, 1930, to the property described in Policy No. 9185 of the said Company is fixed, adjusted and agreed upon at the sum of Thirty-nine hundred dollars as follows:

| | |
|---|---:|
| Plant cost me | $4,500,00 |
| Labor | 50.00 |
| Add Cameron Packer installed | 450.00 |
| | $5,000.00 |

| | | |
|---|---:|---:|
| Less for dwelling not destroyed | $500.00 | |
| Less for depreciation | 450.00 | |
| Less for value in lot | 150.00 | 1,100.00 |
| Sound Value and loss | | $3,900.00 |

"And it is hereby further agreed and understood that, in accordance with stipulation heretofore entered into between the Home Insurance Company and Lake Dallas Gin Company, Inc., on the 3rd day of November, 1930, the sum named above thirty-nine hundred and no/100 Dollars, is binding and conclusive upon the said parties as to the amount and extent of the loss only, and does not in any respect waive any of the conditions of the policy.

"Dated at Dallas, Texas this 3rd day of November, 1930

"The Home Ins. Co. of New York
"By ——— Doyle, Staff Adjuster
"Lake Dallas Gin Co., Inc.
"By Norman Bayless, President.
"Witness: S. L. Cummings
"G. O. Stewart."

Nonwaiver agreement:

"It is hereby mutually stipulated and agreed, by and between Lake Dallas Gin Company, Inc., and the Home Insurance Company of New York that any action taken by any representative of either party to this agreement shall not be construed as a waiver of any of the rights to the said Lake Dallas Gin Company or of the said Home Ins. Co., which do now, or may hereafter exist under a policy of insurance issued by the said Home Insurance Company to the Lake Dallas Gin Company, Inc., numbered 9185.

"The intent of this agreement is to reserve all the legal rights of the parties to this agreement and to proceed without delay with an investigation to ascertain the amount of the loss or damage by fire on the 21st day of October, 1930, to the property described in the policy herein referred to, and it is agreed that the acts of said Home Insurance Co. or their representative in endeavoring to ascertain the amount of such loss by appraisement or otherwise shall not be considered a waiver of any of the conditions of the policy referred to herein, nor as affirming or denying any liability under said policy by reason of the fire above mentioned, but the said acts shall be considered as for the benefit of all concerned, without prejudice to the rights of any of the parties to this agreement.

"Dated at Dallas, Texas, this 3rd day of November, 1930.

"Lake Dallas Gin Co., Inc.
"By Norman Bayless
"The Home Insurance Co.
"By ――― Doyle, Staff Adjuster.
"S. L. Cummings
"G. O. Stewart."

The record shows that plaintiffs procured additional insurance on the same property from the Superior Fire Insurance Company in the sum of $1,800, extending one year from date, October 17, 1930, and therefore was in effect at the time of the fire.

There was a jury trial, and following are special issues submitted, with findings of the jury thereon:

"1. Upon what date did the fire which damaged the plaintiffs' property occur? Answer: October 21, 1930.

"2. What was the total amount of loss and damage occasioned by said fire? Answer: $7,000.00.

"3. Do you find from a preponderance of the evidence that the plaintiff suffered a total loss of the property involved in the fire? Answer: Yes.

"4. Do you find from a preponderance of the evidence that the defendant's conduct in investigating the loss and its dealings with the plaintiffs after the fire was calculated to lead the plaintiffs to believe that no further proof of loss was required by the company? Answer: Yes.

"5. Do you find from a preponderance of the evidence that the defendant's conduct in investigating the loss and its dealings with the plaintiffs after the fire led the plaintiffs to believe that no further proof of loss was required by the defendant? Answer: Yes.

"6. When the application for additional insurance was presented to Roy F. Oakley, did the plaintiffs instruct him with what company the insurance should be placed? Answer: No.

"7. When the application for additional insurance was presented to Roy F. Oakley did the plaintiffs know in what company the insurance would be placed? Answer: No.

"8. When did the defendant deny liability and refuse payment of plaintiffs' claim? Answer: August 10, 1931.

"9. Was Roy F. Oakley a General Agent of defendant Company at the time the policy sued upon was issued? Answer: General Agent.

"10. If you have answered that the said Oakley was a General Agent of the defendant at the time said policy was issued, did he continue in the capacity of a General Agent of the defendant up to and including the time of the fire? Answer: Yes.

"11. Did the defendant take from Norman Bayless proofs which in substance constitute a proof of loss, within 91 days from the date of the fire? Answer: Yes.

"12. Did the defendant accept the service of Roy F. Oakley in such a way as to hold the said Oakley out so that the plaintiffs or any reasonably prudent person in the plaintiffs' position would be justified in believing that the said Oakley was a General Agent of the defendant Company? Answer: Yes.

"13. When did the defendant's agent Doyle first learn that additional insurance had been obtained on the property in controversy? Answer: On or about Oct. 25, 1930.

"14. After the said Doyle learned that additional insurance had been obtained upon said property did the defendant make any investigation of the loss? Answer: Yes.

"15. After the said Doyle learned that additional insurance had been obtained upon said property did he obtain from Norman Bayless a written sworn statement as to the cause and amount of loss occasioned by the fire? Answer: Yes.

"16. What amount in dollars represents the loss suffered by the fire to the gin building described in the policy sued on? Answer: $1,500.00.

"17. What amount in dollars represents the loss suffered by the fire to the gin machinery described in the policy sued on? Answer: $3,000.00.

"18. What amount in dollars represents the loss suffered by the fire to the engine and boiler described in the policy sued on? Answer: $1,500.00.

"19. What amount in dollars represents the loss and damage suffered by the fire to the seed house described in the policy sued on? Answer: $300.00.

"20. What amount in dollars represents the loss and damage suffered by the fire to the cotton house described in the policy sued on? Answer: $700.00."

There were supplemental findings of fact by the trial court, which, together with the decree itself, are recited in the judgment as follows:

"The court after having heard said special verdict and findings find that the same are in proper form and such issues having been examined and the court further finds from uncontroverted evidence that on the 27th day of August, 1930, the defendant through its agent Roy F. Oakley, Lewisville, Texas, issued and delivered its certain policy of insurance No. 9185 by the terms of which it insured the Lake Dallas Gin Company from Noon August 27th, 1930, to August 27th, 1931, at noon against all direct loss or damage by fire to an amount not to exceed $3000.00 on the property therein mentioned which constituted the Lake Dallas Gin, said policy being made to the Lake Dallas Gin Company and

payable to the Denton County National Bank under loss payable clause that on or about the 15th day of October, 1930, J. W. Degan, President of the Denton County National Bank suggested to Norman Bayless, President of Lake Dallas Gin Company that he should have more insurance on the gin and thereafter Roy F. Oakley took the application from the Lake Dallas Gin Company for other insurance and on the 17th day of October, 1930, the Superior Fire Insurance Company issued its policy of Insurance No. 762, whereby it insured the same property covered by the policy issued by the defendant for one year in an amount not to exceed $1,800.00, and said policy reached its agent, Roy F. Oakley on the morning of October 22, 1930. That the said Roy F. Oakley was the same person who obtained the application from the Lake Dallas Gin Company for the $3000.00 policy sued on; that defendant's agent Roy F. Oakley advised defendant's staff adjuster Doyle that the property covered by the policy of insurance had been destroyed by fire on the 24th or 25th of October, 1930, and at such time advised the said Doyle of the issuance of the additional policy of insurance by the Superior Fire Insurance Company.

"It is the opinion of the court from said findings of the jury and the undisputed evidence in this case that the plaintiffs are entitled to recover the full amount sued for, towit, the sum of $3000.00, with interest thereon at the rate of 6% per annum from August 10, 1931; and it further appearing to the court that the Lake Dallas Gin Company is indebted to the Denton County National Bank in the sum of $4,000.00 with 8% interest from February 27th, 1930, and 10% additional thereon as attorney's fees, aggregating the sum of $5100.00, and there was only $4800.00 insurance on said property and that as between the plaintiffs the Denton County National Bank is entitled to the entire amount.

"It is therefore ordered, adjudged and decreed by the court that the plaintiffs Lake Dallas Gin Company, a corporation, and the Denton County National Bank, a corporation of Denton, Texas, do have and recover of and from the defendant Home Insurance Company of New York, a corporation, the said sum of Three Thousand Sixty-four & No/100 Dollars with interest thereon at the rate of 6% per annum from this date and all costs in this behalf expended for which plaintiffs may have their execution and that as between the plaintiffs the recovery herein shall be entirely in favor of the plaintiff Denton County National Bank and the plaintiff Lake Dallas Gin Company shall take nothing herein."

■ The policy for additional insurance was procured through Roy F. Oakley, who was local agent for that company at that time as well as for defendant, and there was no proof that defendant ever consented to such additional insurance or knew of it prior to the fire, unless it can be said that Oakley's knowledge thereof was chargeable to the defendant by virtue of his agency in handling its insurance. And whether or not there was proof, prima facie, that it was one of Oakley's duties under his employment by the defendant to report to it the issuance of such additional insurance is to be determined by the common-law rules of evidence; the provisions of article 5056, Rev. Civ. Statutes, prescribing who shall be deemed an agent of an insurance company in the issuance of policies, having no application, as settled by the decision in Hartford Fire Ins. Co. v. Walker, 94 Tex. 473, 61 S. W. 711.

■ According to Oakley's testimony, he took the application for the additional insurance, and that policy was not received by him for delivery to the insured until after he heard of the fire. He further testified that he never issued policies on gins, and that policies on gins were issued by defendant out of its Dallas office and upon written applications therefor. He further testified that it was his duty to report to defendant when a fire occurred on property covered by one of its policies, and he did make such a report of the fire in controversy here, but there was no direct testimony from any source that it was one of the duties of his employment, by defendant, to report the additional insurance; or that defendant ever received notice of such insurance before the fire; while, according to the evidence offered by the defendant, his agency with reference to insurance terminated with the delivery of a policy to the insured after its issuance by officers in charge of its Dallas office. It is our conclusion that the evidence introduced was insufficient as a conclusion of law to sustain plaintiffs' contention that defendant through Roy F. Oakley as its local agent was chargeable with knowledge of the additional insurance before the fire occurred; and hence the plea of waiver based on the contention to the contrary is overruled. East Texas Fire Ins. Co. v. Blum, 76 Tex. 653, 13 S. W. 572; Southern Mutual Fire Ins. Co. v. Mazoch Bros. (Tex. Civ. App.) 291 S. W. 257; 26 C. J. p. 298, § 369; Queen Ins. Co. v. May (Tex. Civ. App.) 35 S. W. 829; 8 Cooley's Briefs on Insurance (Supplement) p. 4083 (bottom page 5411).

The record shows that the only proof of loss furnished by plaintiffs to the defendant was what purports to be a proof of loss in terms required by the policy, signed and verified by Norman Bayless for the Dallas Gin Company and by R. M. Barnes, cashier of the plaintiff Denton County National Bank. The date of that instrument was June 26, 1931. A letter written by Geo. M. Hopkins as attorney for plaintiff gin company, addressed to D. D. McLarry, general agent of defendant at Dallas, Tex., dated May 23, 1931, requested payment of $3,000 to cover loss by

the fire with the statement that the writer did not know whether proof of loss had been furnished, but, if not, requesting blanks to be used for making such proof. In reply to that letter, defendant's attorneys wrote Hopkins, saying that, after investigating the facts, they had found that defendant was not liable on the policy, and had so advised the defendant. The date of that letter was August 10, 1931. That evidence was insufficient to support the contention made that plaintiffs furnished to the defendant the proof of loss according to the terms and within the time specified in the policy.

In New Orleans Ins. Ass'n v. Griffin, 66 Tex. 232, 18 S. W. 505, 506, it was held that the provision of forfeiture of fire insurance policies, if additional insurance is taken out without the consent of the insurer, was valid and binding, but that the insurance company may be held to a waiver of that right under a proper showing. It was further held that the waiver was not established merely by testimony that the insured informed the agent of his intention to take out additional insurance. In discussing what was necessary to show waiver or estoppel, the court said: "What occurs must be sufficient to make it unfair for the company to insist upon the defense."

In Fitzmaurice v. Mutual Life Ins. Co., 84 Tex. 61, 19 S. W. 301, it was held that the statement or acts relied upon to constitute a waiver of a provision in the contract of insurance, inserted for the benefit of the insurance company, must be made by a general agent or one acting within the scope of his authority.

In East Texas Fire Ins. Co. v. Blum, 76 Tex. 653, 13 S. W. 572, it was held that an agent with authority to procure a contract has no power to discharge it by reason of his original authority.

The following is quoted from the syllabus of American Central Ins. Co. v. Nunn, 98 Tex. 191, 82 S. W. 497, 68 L. R. A. 83: "An insurance company did not waive its defense under the 'iron safe clause,' by reason of the failure of insured to keep and produce books, by requiring him to submit to an examination concerning the loss, where the policy provided that he should do so when required and that the insurer should not be held to have waived any condition of the policy thereby."

In Providence-Washington Ins. Co. v. Levy & Rosen (Tex. Com. App.) 222 S. W. 216, the court sustained the validity of a provision against additional insurance, but remanded the case for trial of the issue of waiver of that provision upon allegations that after the fire, the insurance company, with full knowledge of the amount of insurance carried on the property, and with knowledge of all the facts, recognized the validity of the policy sued on.

It is also the rule that an insurance policy is a contract to be liberally construed in favor of the insured. Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S. W. 1060; Hulen v. Am. Cent. Ins. Co. (Tex. Com. App.) 45 S. W.(2d) 570.

The right to claim a forfeiture is for the benefit of the insurer, which may be waived by it, or it will be estopped to assert it by a proper showing. Equitable Life Assur. Soc. v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625.

In Home Ins. Co. v. Puckett (Tex. Com. App.) 27 S.W.(2d) 111, it was held that knowledge is an essential element of waiver, and there can be no waiver based on facts not known to the insurance company.

We quote the following from the syllabus in Concordia Ins. Co. v. School District No. 98, 282 U. S. 545, 51 S. Ct. 275, 75 L. Ed. 528:

"The requirement of a fire insurance policy that verified proofs of loss be furnished within sixty days after the loss has occurred is waived, and the insurer estopped against setting it up, where the insurer, through adjusters, investigated the loss and proposed a settlement which was not accepted because of a difference in opinion as to the value of the building destroyed, and no objection was made at that time that proofs of loss had not been furnished, or request made that they be furnished.

"A provision of a fire insurance policy that no officer, agent, or other representative shall have power to waive any provision or condition of the policy except such as by the terms of the policy may be the subject of agreement indorsed thereon or added thereto, and that no waiver shall be effective unless written upon or attached to the policy, has reference to those provisions and conditions which constitute part of the contract of insurance, and does not apply to a waiver, after the loss occurs, of stipulations in respect of things to be done subsequent to the loss as prerequisites to adjustment and payment, such as the furnishing of verified proofs of loss within a stated time."

Omitting an extended review of the decisions of this state, we believe it sufficient to say that the distinctions so made in the case last cited between stipulations which enter into and become essential elements of a contract of insurance which cannot be varied by parol testimony, and those relating to what may be done after the loss occurs which are not subject to the parol evidence rule, is impliedly recognized. And in this connection it is to be noted that the adjuster's agreement as to value and the nonwaiver agreement, both of which were signed by the insurer and the assured, relate only to the matter of determining the amount of the loss resulting from the fire, and therefore constituted no part of the contract of insur-

ance proper. The stipulation in the policy, to the effect that no officer, agent, or representative of the company should have power to waive any provisions or conditions of the policy unless such waiver shall be in writing and attached to the policy, was not such an agreement as could not be waived by a subsequent agreement or acts implying such a waiver. Morrison v. Insurance Co. of North America, 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63; Occidental Fire Ins. Co. v. Fort Worth Grain & Elevator Co. (Tex. Civ. App.) 294 S. W. 953, and other decisions therein cited. Especially is this true in view of the quoted stipulations in the policy providing that the ascertainment of the amount of the loss shall be made by the joint efforts of the insurer and the insured.

■■ The labor and expense incurred by the plaintiff in collaborating with the adjuster to ascertain the amount of the loss could not furnish a proper basis for an estoppel in pais, since he was under contract so to do. Nor could the insurance company invoke the nonwaiver agreement as a valid and binding contract precluding plaintiffs' claim of waiver, since it was without consideration to support it, in view of the obligation of the insurance company to make the investigation to determine the amount of the loss.

"Where a legal obligation exists, a cumulative promise to perform it, unless upon a new consideration, is a nullity." 6 R. C. L. § 73, p. 664.

The determination by the insured and the adjuster of the amount of the loss resulting from the fire was binding upon both by reason of the agreement therefor; but the stipulations in the nonwaiver agreement to the effect that such undertaking to determine the loss should not be held a waiver of its right to claim a forfeiture of the policy in the event the assured should take out additional insurance was not binding on the plaintiffs as a contract, for lack of sufficient consideration to support it, and plaintiffs especially pleaded such lack of consideration.

■ The question to be determined is whether or not the act of the company in undertaking, through R. E. Doyle, its regularly employed adjuster, to determine the amount of the loss, after information had been furnished to the defendant through its general office in Dallas and also at its home office in New York, as testified to by Roy F. Oakley, that the fire had occurred, and also that additional insurance on the same property had theretofore been taken out—as found by the jury—was a waiver of the right to claim a forfeiture of the policy on either of those grounds. In the first place, we believe it to be clear that, since the amount of the loss was determined by the adjuster and by the insured well within the 91-day period, the defendant would be in no position to claim a forfeiture for failure of plaintiff to furnish written proof of the loss within the 91-day period, in accordance with the strict terms of the policy, the only purpose of which would be to afford an opportunity to investigate the results of the fire; notwithstanding the fact that the finding of the jury that such proof was furnished was without sufficient support in the evidence. It is our conclusion that under the circumstances just stated the acts of the defendant through its regularly employed adjuster Doyle in investigating and determining the amount of the loss was a waiver of the defendant's right to claim a forfeiture, either for failure to furnish such proof or on account of additional insurance. And in this connection it is to be noted further that, although the adjuster's agreement as to loss did not include inventory of the property insured with the cost of each article, the interest of the insured in the property, the incumbrances thereon, a statement of other insurance covering the property, and other details which were required by the policy for proof of loss to be made by the insured, we believe that the omission of such details was waived by the adjuster, within the scope of his authority as representative of the company. Cooley's Briefs on Insurance (2d Ed.) vol. 5, p. 3987.

In the leading case of Equitable Assur. Society v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625, 628, it was held that a provision for forfeiture of a policy being for the benefit of the insurer may be waived by it, and that no act of the insured is necessary to make such waiver effectual, as in case of estoppel; and that such a waiver will result, in the absence of any agreement to that effect, from negotiations or transactions with the insured, after knowledge of the forfeiture, by which the insurer recognizes the validity of the policy or does acts based thereon; and further that it is not necessary to such waiver that it rest on a new agreement or be supported by a new consideration; or that the party charged therewith intended the waiver. In holding that the insurance company waived the right to claim a forfeiture against Ellis, the holder of a policy for nonpayment of premiums within the time specified in the policy, the court quoted with approval the following from Queen Ins. Co. v. Young, 86 Ala. 424, 430, 5 So. 116, 11 Am. St. Rep. 51: "Conditions in a policy of insurance, limiting or avoiding liability, are strictly construed against the insurer, and liberally in favor of the assured. Though a waiver may be in the nature of an estoppel, and maintained on similar principles, they are not convertible terms. The courts, not favoring forfeitures, are usually inclined to take hold of any circumstances which indicate an election to waive a forfeiture. A waiver may be created by acts, conduct, or declarations insufficient to create a technical estoppel. If the company, after knowledge of the breach, enters into negotiations or transactions with

the assured, which recognize and treat the policy as still in force, or induces the assured to incur trouble or expense, it will be regarded as having waived the right to claim the forfeiture." See, also, Fidelity Lloyds of America v. Geddie, 116 Tex. 656, 296 S. W. 500; Occidental Fire Ins. Co. v. Fort Worth Grain & Elevator Co. (Tex. Civ. App.) 294 S. W. 953 (writ refused) cited above; 8 Cooley's Briefs on Insurance (2d Ed.) p. 4829; Id., p. 4448, and p. 4456.

And it is to be noted further that the jury found that the defendant did not deny liability and refuse payment of plaintiffs' claim until August 10, 1931, which was long after the action by the adjuster. We quote the following from Cooley's Briefs on Insurance (2d Ed.) vol. 5, p. 4448: "It is a general rule that where the company with knowledge of a breach of a condition or warranty, requires the insured after a loss to furnish proofs, or to furnish additional proofs, it will be held to have waived its right to insist on the defense arising out of such breach. The theory is that the proofs are of no benefit or use unless there is an intention to pay the loss notwithstanding the breach, and therefore a demand for them is equivalent to a declaration of such intention, which the company is not at liberty to withdraw after the insured has gone to the trouble and expense of complying with the request."

Following that text many decisions from different states are cited and discussed; with this observation on page 4452: "It is not easy to reconcile all the cases dealing with the effect of a denial of liability or of waiver by the company at the time of the demand for proofs. The authorities, however, support the proposition that where insured, at the request or demand of the company, is put to trouble or expense in the production of proofs of loss, a waiver of a breach of warranty or condition known to the company will arise, though the demand or request is accompanied by a general statement that no waiver of any right of the company is intended."

And the decisions which are noted in subsequent pages of the text show conflicting holdings. In many of them waiver and estoppel are used in the same sense, the term "estoppel" being sometimes applied when, strictly speaking, the facts amount to a waiver only; and, properly interpreted, the term "estoppel," used in that connection, if given significance at all, would mean estoppel by waiver. Some of the apparent conflicts in decisions cited in the text vanish when the distinction is observed between a stipulation in the policy of lack of authority in the agent to waive any warranty constituting a part of the contract of insurance proper, and a breach of which would invalidate the policy, and a stipulation of lack of authority to waive conditions arising after the fire. And

in 5 Cooley's Briefs on Insurance (2d Ed.) p. 3987, the following is said: "Though it was asserted in the early case of Phœnix Ins. Co. v. Lawrence, 4 Metc. (Ky.) 9, 81 Am. Dec. 521, that an adjuster for an insurance company did not have power to waive a forfeiture, the rule supported by the weight of recent authority is that an adjuster authorized to adjust a loss has power to waive forfeitures." See, also, 8 Cooley's Briefs on Insurance (2d Ed.) pp. 4448 and 4456, subd. A-3; National Standard Fire Ins. Co. v. Hubbard (Tex. Civ. App.) 31 S.W.(2d) 859.

In connection with special issue No. 3 inquiring whether or not plaintiffs suffered a total loss of the property involved, and to which the jury answered "Yes," the court gave this instruction: "In considering question No. 3 you are instructed that a policy of insurance applies to the property insured in its then character and when such property has been damaged to such an extent as to lose its identity and its specific character it constitutes a total loss. It is not necessary that all material out of which it is constructed be destroyed or rendered valueless. There can be no total loss so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the structure to the condition in which it was before the injury. Whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question before the fire, would, in proceeding to restore the structure to its original condition, utilize such remnant as such basis."

Defendant objected to that definition on the ground that whether the building was so damaged as to lose its identity was not a correct test, and that in that respect the instruction was misleading and erroneous, even though the remainder of the instruction presented a proper test. Under the decisions of Royal Ins. Co. v. McIntyre, 90 Tex. 170, 37 S. W. 1068, 35 L. R. A. 672, 59 Am. St. Rep. 797, and Fire Ass'n v. Strayhorn (Tex. Com. App.) 211 S. W. 447, we believe that the objection so urged to the instruction is well taken; but that error was harmless, in view of the fact that the plaintiff reached a definite agreement with the adjuster as to the amount of the loss, which agreement, as said before, was valid and binding on both parties. The judgment rendered was for the sum of $3,000, the face value of the policy. According to the terms of the policy, plaintiffs' recovery was limited to three-fourths of the loss on all personal property damaged, and three-fourths of the damage to buildings not totally destroyed; while the amount for which the houses were insured was a liquidated demand if they were wholly destroyed. Three-fourths of $3,900, the amount agreed on in the adjuster's agreement as the total loss, was $2,925, and under the express pro-

visions of the policy that loss was to be apportioned between the policy sued on, which was for $3,000, and the policy for additional insurance, which was for $1,800. So apportioned, plaintiffs' recovery would be limited to $1,828.13, and we conclude that it should be so apportioned without regard to the findings of the jury of the values of the different items of property, since the adjuster's agreement was of the loss as a whole without any segregation of the different items; and since it furnishes no sufficient basis for an apportionment of the loss so as to allow the sum for which any of the houses were insured as a liquidated demand, leaving the three-fourths value provision applicable only to the remainder of the property insured. In this connection it is to be noted that the property insured was all itemized and the amount of insurance of each item set out, with a further provision that the insurance on each item should be considered separately from the rest.

Hence we conclude that the judgment was excessive to the extent of the difference between $1,828.13 and $3,000. By reason of that error the judgment of the trial court will be reversed and the cause remanded, unless appellees shall file a remittitur of that excess within 15 days from the date of this decision. If the remittitur is so filed, then the judgment will be affirmed for the balance indicated.

### On Motion for Rehearing.

■ In a counter proposition in briefs of appellees, Lake Dallas Gin Company and the Denton County National Bank, it is insisted that the insurer had waived its defense, based on the procurement of additional insurance, by reason of the fact that, after learning of such additional insurance, the insurance company had its adjuster to investigate the fire and to take a statement from the insured as to the cause of the loss and induce the insured to agree to the amount of loss shown in the nonwaiver agreement. And there was a special plea by appellees presenting that contention.

Having invoked such action on the part of the insurer as a waiver of the defense stated, appellee Denton County National Bank is in no position to avoid the agreed valuations of losses sustained as a result of the fire as shown in the adjuster's agreement.

Furthermore, the Supreme Court of Ohio in Erie Brewing Co. v. Ohio Farmers' Insurance Co., 81 Ohio St. 1, 89 N. E. 1065, 25 L. R. A. (N. S.) 740, 135 Am. St. Rep. 735, 18 Ann. Cas. 265, that a mortgage clause attached to a fire insurance policy at the time it is executed providing for payment to the mortgagee as his interest may appear is not an assignment of the policy to the mortgagee, nor does it bind the mortgagee to pay any premiums or do any act necessary to keep the policy in force; and, in the absence of fraud or collusion, he is bound by the award of the appraisers provided for in the policy as to the amount of the loss, although he was not a party to, or had any notice of, the appraisement and award. Many decisions are cited in support of that holding, including Chandos v. American Fire Ins. Co., 84 Wis. 184, 54 N. W. 390, 19 L. R. A. 321. Other decisions are noted and discussed, which reach a contrary conclusion, but it is pointed out that in some instances, at least, they are distinguishable by reason of provisions in some of the policies indicating that the mortgagee would have a right to be heard when such adjustment of values is reached. In this case the mortgage clause specifically provides that it is subject to the terms of the policy, and one of the provisions of the policy is that, in the event of loss of any manufactured article, the loss shall be ascertained "by the insured and this company, or if they differ, then by appraisers as hereinafter provided," and there is no provision in the policy which would indicate that the insured would not have the right to adjust the amount of the loss without consent of the mortgage holder. And, since appellee has failed to file the remittitur suggested in our original opinion, the judgment of the trial court is reversed in its entirety, and the cause is remanded for errors pointed out in our original opinion.

Appellees' motion for rehearing is overruled.

We have also duly considered appellant's motion for rehearing, and the same is also overruled.