## HANOVER FIRE INS. CO. v. SLAUGHTER.

### No. 4826.

Court of Civil Appeals of Texas. Amarillo.

Dec. 6, 1937.

Bean & Bean, of Lubbock, for appellant.

Jas. A. Gowdy, of Olton, and Griffin & Morehead, of Plainview, for appellee.

JACKSON, Justice.

The appellant, the Hanover Fire Insurance Company of New York, on April 9, 1936, issued to appellee, W. M. Slaughter, a Texas standard combination certificate to protect certain grain for a period of five months against loss or damage by fire.

The provisions of the policy material to this appeal are as follows:

"The Hanover Fire Insurance Company of New York, in consideration of Twenty and 70/100 Dollars ($20.70) does insure W. M. Slaughter against loss or damage by fire under this certificate, which is accepted subject to all the terms, conditions and stipulations embraced in the printed conditions of the Texas Standard Fire Policy, which are hereby made a part hereof, to

an amount not exceeding an amount of Fifteen Hundred and No/100 Dollars ($1500.00) for the term of five months. * * *

"And it is understood and agreed that the basis for adjustment of any claim for loss or damage to the property covered by this contract shall not exceed the actual cash value of such property at the time of the loss and at the place of the fire, which cash value shall in no event be greater than it would then and there cost to replace the property damaged or destroyed with property of the same kind and quality."

On July 14, 1936, while the policy was in force and effect, the grain insured thereby was totally destroyed by fire. The appellant failed to pay the loss, and on October 28th, thereafter, the appellee instituted this suit in the district court of Bailey county, to recover on the policy; alleged its validity, that he had complied with all the terms and provisions thereof, and sufficiently pleaded his cause of action.

The appellant answered by numerous exceptions, general denial, and pleaded that the certificate required the grain, while insured, to be kept on a farm owned or rented by appellee and stacked on cultivated land; that such certificate was accepted subject to all the requirements and stipulations embraced in the printed conditions of the Texas standard fire policy; that such standard policy contained a provision to the effect that if loss occurred by fire, the insured should, within 91 days thereafter, unless such time was extended in writing, furnish to the insurer a signed and sworn statement constituting a proof of loss; also that if the insured failed to comply with such provision, the policy should be void; that appellee did not comply with such provision and wholly failed to furnish appellant proof of loss according to and within the time prescribed, and in fact, never at any time furnished such proof; that such provision was not waived, no extension of time was made, and by reason of the failure of appellee to comply with the provision requiring him to furnish proof of loss, no liability by reason of such policy existed against appellant.

The appellee, in a supplemental petition, in reply to the defense of failure to furnish proof of loss, pleaded a general denial and set up at length the facts, circumstances, and conduct of appellant and its agents, by which he claims the insurer waived the requirement as to proof of loss and was estopped to assert such as a defense against the policy.

In response to special issues submitted in the main charge, the jury found in substance that appellee was authorized by the owner to keep the grain stacked on the land where it was destroyed by fire; that its market value at the time and place of its destruction was $1,750, and it would have cost $337.50 to have the grain threshed and hauled to market. In reply to a special issue given at appellant's request, the jury answered that the grain in question was stacked on cultivated land. On these findings the court decreed that appellee recover of and from the appellant the sum of $1,434.37, with interest at the rate of 6 per cent. per annum from the 16th of December, 1936, until paid, and cost of suit.

The appellant, by several propositions, complains of the refusal of the court to direct a verdict in its behalf, as requested, claiming that the uncontroverted evidence shows appellee did not at any time furnish proof of loss and that the furnishing thereof was at no time waived by appellant.

The certificate of insurance was accepted subject to the stipulations required in a Texas standard fire policy and such stipulations were, by reference, made a part of the insurance contract. Among other things, these provisions required the insured, within 91 days after the destruction of his property by fire, unless the time was extended therefor in writing, to furnish to the insurer a signed and sworn proof of loss; that the company should not be held to have waived such provision by any requirement, act, or proceeding on its part relating to the appraisal or any examination provided for in the policy; that the loss should not become payable until after 60 days after the ascertainment, estimate, and satisfactory proof of loss was received by the company; and that no suit or action for recovery for any claim should be made sustainable until after such compliance by the insured with the provisions of the policy.

In our opinion, the testimony shows, without substantial dispute, that the appellee never furnished to appellant at any time a proof of loss, as contemplated and required in a Texas Standard Fire Policy.

In Commercial Union Assur. Co., Limited, v. Preston, 115 Tex. 351, 282 S. W. 563, 566, 45 A.L.R. 1016, it is said by

the Supreme Court that: "The policy sued on, following the standard form prescribed by the state insurance commission, required as a condition to recovery on the policy, that the provision be complied with, that the insured render a statement to the company, stating, among other things, the cash value of each item of property lost or damaged by fire, and the amount of loss thereon. The decisions of this court recognize that, when the policy makes the furnishing of proofs of loss a condition precedent to the enforcement of the policy, and the proofs have been neither furnished nor waived, the insured fails to establish his right to recover on the policy." Citing authorities.

It is undisputed, however, that shortly after the fire the appellee notified Mr. Alsup, the agent of appellant, of the fire, his loss, and that he wanted the company to pay him his insurance. Said agent fixed up some papers, which were signed by appellee, sent to the company by the agent, who advised the insured that the matter would be attended to promptly; that a special adjuster would come out in a short while, who would attend to the matter; that Mr. Hankins, a special adjuster, did come and investigate for the company; that prior to such investigation, he had appellee sign what is known as a nonwaiver agreement, and thereafter made a complete examination of the facts relative to the fire, the total destruction of the property; secured statements from the neighbors and the boy who helped to cut the grain, and although he talked to appellee frequently, who was ready and willing to make any statement, answer any question, or give any information desired, neither requested nor demanded any proof of loss, but advised appellee that the insurance was invalid. Mr. Hankins testified:

"I offered to pay him on the basis that I figured it out, the amount of the loss.

"Q. How much did you offer to pay him? A. $300.00.

"Q. Did you, or did you not offer him $300.00? A. I offered him $300.00, which was under the policy."

■■ The appellee consulted the agent, Mr. Alsup, who countersigned his policy, on many occasions; was informed that the company was liable and should go ahead and pay the loss. The testimony indicates that during the entire period in which proof of loss could have been made, appellee believed from the conversations, acts, and conduct of the two agents of the company that no further proof of loss would be required; that the only difference between the insurer and the insured was as to the value of the grain destroyed.

The appellant had at the trial the paper made out by Mr. Alsup, the agent, and signed by appellee and sent to the company, but did not introduce it in evidence.

The nonwaiver agreement that appellee signed for the adjuster before he made his investigation provided:

"It is hereby mutually stipulated and agreed by and between W. M. Slaughter, Party of the First Part, and the Insurances Companies whose names are signed hereto, the Party of the second part, that any action taken, request made, or information now or hereafter received by said Party of the Second Part, in or while investigating and ascertaining the cause of fire, the amount of loss or damage or other matter relative to the claim of the said Party of the First Part, for property alleged to have been damaged or lost by fire on the 14 day of July, 1936, shall not in any respect or particular change, waive, invalidate or forfeit any of the terms, conditions or requirements of the policies of insurance of the Party of the Second Part, held by Party of the First Part, or any of the rights whatever of any party hereto.

"The intent of this agreement is to save and preserve all the rights of all parties, and permit an investigation of the claim and the determination of the amount of the loss or damage, in order that the Party of the First Part may not be unnecessarily delayed in his business and that the amount of his claim may be ascertained and determined without prejudice to any rights *of* defenses which the said Party of the Second Part may have."

The provision that the "intent of this agreement * * * to save and preserve all the rights of all parties * * * in order that the Party of the First Part may not be unnecessarily delayed in his business," according to the finding of the jury, in which we concur, completely failed, if it was intended to apply to any of the rights of the assured.

The nonwaiver paragraph in the policy and the nonwaiver agreement to which the appellee affixed his signature, at the request of the adjuster, before he made an investigation, do not, as a matter of law, entitle appellant to a directed verdict for

a failure to furnish proof of loss, since, in our opinion, the evidence presents a fact issue on the questions of waiver and estoppel which should be submitted to the jury. 24 Tex.Jur. par. 221, p. 1008, par. 225, p. 1020; St. Paul Fire & Marine Ins. Co. v. Pipkin, Tex.Civ.App., 207 S. W. 360; Federal Surety Co. v. Smith, Tex. Com.App., 41 S.W.2d 210; Carolina Ins. Co. v. Christopher, Tex.Civ.App., 80 S.W. 2d 774, affirmed in Tex.Com.App., 106 S.W. 2d 138, and authorities cited; Garrison v. Great Southern Life Ins. Co., Tex. Civ.App., 72 S.W.2d 692.

We are cognizant of the holding of the Supreme Court in Home Ins. Co. of New York v. Lake Dallas Gin Co. et al., 127 Tex. 479, 93 S.W.2d 388, but, in our opinion, the principles there announced are not controlling in this case. The opinion discloses that the breach of the insurance contract there considered had occurred prior to the loss, and at the time the non-waiver agreement was signed, the insurer was not liable on the policy because of the previous breach by the insured of the provision of the policy prohibiting additional insurance. It also appears that the agent, on whose acts and conduct waiver and estoppel were predicated, was acting beyond the scope of his authority. In the instant case the breach relied on to defeat the policy occurred after the loss and there is no contention that the agent, upon whose conversations, investigations, and conduct waiver and estoppel are based, was not acting within the scope of his authority.

In Occidental Fire Ins. Co. v. Fort Worth Grain & Elevator Co., Tex.Civ.App., 294 S.W. 953, writ refused, the court held that notwithstanding the standard form of the policy and the nonwaiver agreement signed by the insured after the loss, that the insurer could, by its acts and conduct, waive the breach of the warranties and concurrent insurance clauses and estop itself from urging such breach as a defense. This assignment is overruled.

■ It does not follow that because appellant was not entitled to a directed verdict that the judgment for appellee was authorized. He sought to recover on his insurance contract; pleaded performance of all its terms and provisions, but failed to furnish proof of loss, as his contract required, and undertook to justify such failure by pleading and offering proof tending to show that appellant had waived fur-

nishing proof of loss and was estopped to urge such failure as a defense. The issue of waiver and estoppel was not incidental, but because he breached his contract, was essential to appellee's recovery; hence, if we are correct in holding that a question of fact was presented on these issues, it was incumbent on appellee not only to plead and prove such fact issues, but to secure a finding of the jury thereon. The burden of proof was upon appellee to prove that he was entitled to a judgment and it was the duty of the trial court to submit the essential issues, if controverted, to the jury. Spencer v. Pettit et al., Tex.Com.App., 2 S.W.2d 422.

In International-Great Northern R. Co. v. Casey, 46 S.W.2d 669, 671, the Supreme Court approved the holding of Judge Sharp, in which he said:

"If the court failed to submit such issues, it was the duty of plaintiff to request their submission. If plaintiff failed to do this, he has not met the burden placed upon him by law. If it was not done, the law presumes that he waived it, and, unless it is a matter that is incidental or supplemental to the ultimate issues, then the trial court would not be justified in finding this essential fact without having an answer to the jury first made on the issues submitted." Citing authorities. See, also, Federal Surety Co. v. Smith, supra.

■ If a jury is demanded and a case submitted on special issues, the parties are entitled to have every essential and independent issue passed on by the jury and the court is unauthorized to substitute his finding on on essential issue and render a judgment thereon in a case submitted to a jury. International-Great Northern R. Co. v. Casey, supra.

■ The appellee, in a counter-proposition, asserts that the court erred in admitting in evidence the printed provisions of a Texas Standard Fire Policy requiring proof of loss, over his objection that such provisions were hearsay, not the proper method of proving that a Texas standard fire policy required proof of loss, was not authenticated, and not the best evidence.

Before introducing the printed provisions complained of, the agent of appellant, shown by the record to have been in the insurance business and an insurance adjuster for years, testified that he was familiar with, knew, and would recognize, from experience, the provisions required

in a Texas standard fire policy, and the printed lines presented to him for examination and inspection were the provisions relating to proof of loss required in a Texas standard fire policy. These provisions were a part of appellee's insurance contract, but he failed to offer any evidence to prove the contents of such provisions, and hence failed to show that he had performed all the terms and conditions of his policy that had not been waived. Since he was required to show performance, we doubt if he is in a position to complain of the testimony offered. However, be that as it may, a copy of the printed provisions certified to by the commission of insurance, while admissible, is not the only manner by which proof of the contents of such provisions may be made.

In Smithers v. Lowrance et al., 35 Tex. Civ.App. 25, 79 S.W. 1088, 1089, it is said: "The rule is both ancient and familiar that public records are provable either by certified or examined copies, in the absence of a statute making certified copies the only method of proof. 1 Greenleaf on Evidence, §§ 91, 508, 509. We have a statute on the subject * * * but it does not change the common-law rule."

This holding above was affirmed by the Supreme Court in 100 Tex. 77, 93 S.W. 1064. See, also, Harvey and others v. Cummings and others, 68 Tex. 599, 5 S.W. 513; 22 C.J. p. 821, par. 936.

The testimony of the witness, in substance, is that the printed provisions admitted in evidence were an examined copy, and appellee's counter-proposition is overruled.

Appellant's assignments challenging the sufficiency of the testimony to show the market value of the grain destroyed and the cost of hauling and threshing, in view of a reversal of the judgment, need not be determined, as any uncertainty will doubtless be removed on another trial.

The judgment of the trial court is reversed and the cause remanded.